## No. 13,687.

### E. A. BOUDREAUX VS. E. FEIBLEMAN, SONS & CO.

#### SYLLABUS.

A merchant who authorizes his clerk to call on one of his customers for payment of his account and who, through his clerk obtains a policy of fire insurance on a building destroyed by fire a short time previous and collects the policy, is bound by the conditions by which the clerk obtained possession of the policy.

He is without right to recognize the acts of his clerk in one part and repudiate them in another. The amount is credited as agreed upon; the remainder is returned to the customer as in accordance with the inducement held out by the clerk.

A PPEAL from the Civil District Court, Parish of Orleans—*St. Paul, J.*

*Albert Voorhies,* for Plaintiff, Appellant.

*Clegg & Quintero,* for Defendants, Appellees.

The opinion of the court was delivered by

BREAUX, J. Plaintiff sued to recover from defendant the sum of one thousand and seventy-six and 95-100 dollars, the amount of a fire insurance policy which plaintiff held in the Sun Mutual Insurance Company and which he was entitled to collect because the property which he had insured had been destroyed by fire. Plaintiff also sues to recover damages from defendant in the sum of one thousand dollars. The facts of the case are that plaintiff was the owner of a store which was burnt down on the 26th of April, 1898. Two days afterward defendant's

traveling salesman called on plaintiff and held out an inducement to him to deliver his policy to the defendants.

The following shows the character of the inducement held out by this clerk to the defendant as sworn to by plaintiff and not denied by the clerk as a witness. He, this clerk, did not testify. Defendant as a witness said: "On Friday, after the fire, he, the traveling clerk, came there and said 'let me have the policy and you can go ahead and rebuild and I promise to give you enough goods to run your store.'"

"Q.—What did you answer him then?

"A.—Then I gave him the policy and I said, Mr. Gailland, I owe other merchants and I would rather give you eight hundred dollars out of the policy and four hundred and fifty dollars will pay the other merchants." And he, the clerk, replied: "I think that would be better." Part of the conversation was heard by another witness and to the extent that it was heard, confirms the verity of plaintiff's testimony.

Plaintiff at the time assigned his policy to defendant for collection. After the proof of loss had been made and the usual delays had elapsed, the insurance company forwarded its check to plaintiff for the amount allowed him on the policy. Again, the traveling clerk called on the defendant. This time it was to have the check endorsed and to have it forwarded to the defendants.

Plaintiff also testified that he bought lumber, with which he intended to construct a building for a store in which to resume his business. Not long after this purchase and while the construction was going on, he said that he called upon defendant firm for the promised advance of goods. This was before the check before mentioned had been collected. The firm declined to make advances and disavowed any authority of the traveling salesman to bind them to make advances. In June, following, however, the defendant firm wrote to him that "owing to existing war which makes matters a little hard with us, we cannot promise you the advance of two hundred and fifty dollars which you ask, but will see later on what we can do for you and hope prospects will brighten up before long." Plaintiff did not resume business. Most of his business had been previously done with and through the defendant firm.

The defendant, in its answer, avers that it collected the amount of the policy and after giving proper credit to the plaintiff, he still remained indebted to it in a balance of two hundred and thirty-one 83-100 dollars. The following is a statement of the account between plaintiff and defendant:

| | | |
|---|---|---|
| Jan. 15, to amount note due Apr. 15, 1898..................$400 00 | | |
| To amount note due June 15, 1898................ 500 00 | | |
| To amount note due Aug. 15, 1898................. 524 21 | | |
| April 19, To amt. bill .................................... 64 32 | | |
| Dec. 31, To interest .................................... 110 75 | | |

$1599 28

Credit—

April 19, cash ..........................................$ 65 00
April 19, cash ......................................... 108 25
April 19, cash ......................................... 50 00
May 9, cash .......................................... 781 15
June, cash ........................................... 295 80
Dec. 31, interest ......................................... 67 25

$1367 45

To balance due Feibleman & Co., $231.83.

This credit statement covers all the credits plaintiff was entitled to under the judgment of the District Court for amounts collected on the policy in question. The District Court rejected plaintiff's demand and dismissed defendant's reconventional demand. From this judgment, plaintiff prosecutes this appeal.

Appellee in his answer joined in the appeal and prayed for an amendment covering the balance it claims plaintiff owes him. We must infer from the testimony that as to part of the amount, to-wit, eight hundred dollars, defendant collected on the policy, plaintiff did not object to crediting it on his account. The utterances of plaintiff as a witness regarding this amount show that he consented to the credit as given. The agreement was to let defendant credit the first amount stated on his account. It is now an accomplished fact. In view of the payment, we do not think that defendant should be condemned to return the amount credited as before stated. But as to the balance, it was agreed between defendant's clerk and plaintiff that it would be returned to him. At the date that this agreement was entered into, the eight hundred dollars in question was more than plaintiff's indebtedness, actually due and matured. The payment made covered all indebtedness except an amount of five hundred and twenty-four 21-100 dollars due and exigible only on August 15th, 1898, which was partly paid from said eight hundred dollars.

It is not to be overlooked that defendant only received with plaintiff's consent the amount to which it was entitled as creditor. It only has its own. If it were returned to plaintiff it would return that which it had received in payment of its claim and for this return it would not receive the least consideration. The promise to give goods gave rise, perhaps, to a right of action for damages, but not for a return of an amount paid in discharge of a pre-existing debt. It falls within the maxim of all systems of laws, both civil and common. *Repetition nulla est ab eo qui suum recipit.*

There is no testimony showing that it was plaintiff's agreement to pay the amount due in August by anticipation. On the contrary, it was stipulated that the balance remaining after crediting the eight hundred dollars would be handed to plaintiff. Defendant contends, in substance, that its agent was not authorized to enter into any such an agreement; that the agent's authority was limited to selling goods for the firm. The evidence discloses that in this instance, at least, they directed him to call on plaintiff for the amount due. The clerk chose to call for the policy in question which was assigned on condition before stated. When the amount to be paid was agreed upon with the insurance company, they made out the check to the order of the insured. This check was sent to this clerk who obtained plaintiff's endorsement, without, so far as the record discloses, informing him that the agreement was not to be carried out by his employers. It was collected by defendant.

Defendant, by the terms of the agreement, had no authority to credit it to plaintiff's account. They could not, under an agreement to receive part of the amount of the policy, credit the whole of it on the claim. As relates to the authority to enter into the agreement, the clerk's act cannot be approved in part and disapproved in part. Defendant not having sought to disavow the act of the clerk in so far as it was beneficial, is not in a situation persuasively to urge that it is not bound by the clerk's act in so far as deemed unfavorable. It cannot ignore the agreement. *Qui sentit commodum sentire debet et onus.*

We pass to another branch of the case, viz.: plaintiff's claim for damages on the ground that defendant did not comply with the agreement to furnish plaintiff goods needed by him to resume business. The asserted conditions are too vague and indefinite to enable us to assess damages. The amount to be advanced was not mentioned, nor the time within which goods were to be sold by the defendant to plaintiff. Moreover, the extent of plaintiff's business is not shown, and there is

no reason to infer, with any degree of certainty, how much or how little plaintiff would have earned if advances in goods had been made to him. This claim is too uncertain to form the basis of any part of a judgment allowing damages.

For these reasons it is ordered, adjudged, and decreed that plaintiff have judgment against defendant condemning it to return the sum of two hundred and seventy-six and 95-100 dollars to plaintiff, and to that extent the judgment is amended; in all other respects it is affirmed at appellee's costs (but reserving to defendant the right to recover from plaintiff all amounts due it by plaintiff).

PROVOSTY, J., takes no part.