MRS. THERESA FINK, wife of JOS. REED

 vs No. 8318

J. L. LANCASTER & al, RECEIVERS T. & P. RY.,
 Appellant.

April 10th, 1922.

MRS. THERESA FINK, wife of JOS. REED

vs No.8318

J. L. LANCASTER & C. L. WALLACE, RECEIVERS T. & P. RY.,
Appellant.

CHARLES F. CLAIBORNE, JUDGE.

This is a damage suit for personal injuries suffered while alighting from a railroad train.

Petitioner averred that in April 1920 she purchased a ticket at Mc Call, Louisiana, to be carried on the train of the Texas & Pacific Railroad to Gretna, in the Parish of Jefferson; that she boarded the train and arrived in Gretna at about three o'clock P. M.; that she proceeded upon the platform of the car upon which she was riding, and down the steps of the car, and thence she put her foot upon a stool placed near said steps by the employees of the railroad for the purpose of assisting passengers in alighting from the car; that the stool immediately tilted over and slid from under her; that she was thrown violently to the ground; that she weighed over two hundred pounds, and that the fall caused her painful injuries which entitle her to recover from the defendant $1800 as compensation for her sufferings and humiliation.

The defendants pleaded a general denial, and averred that if plaintiff was injured it was not through the fault of defendant, but it was the result of her own fault.

By a judgment, accompanied by written reasons, the defendants were condemned to pay the plaintiff $1400. They have appealed.

The testimony establishes beyond a doubt that when the plaintiff put her foot upon the stool it tilted and she fell and injured herself. The defendants admit that fact.

The stool or stepping box in question was offered in

evidence and was exhibited in the argument of the case in this
Court. It measures in inches 9-1/4 by 14-1/4 on top, 12-3/4 by
16-1/4 on the bottom, and is high; it has a slot on the top
piece of 3/4 by 3 to allow the insertion of the fingers to move
it. It is a solid piece of work and is in good condition. It
is the ordinary stool used by railroads to assist passengers in
alighting from the steps of the cars.

The law of the case is as follows:

It is the duty of the carrier to exercise a high degree
of care and skill to carry a passenger and to set him down safely
at his place of destination. This duty applies to approaches
and to all means of ingress and egress. 5 La. 431; 27 A. 377;
34 A. 145; 37 A. 705, 648, 694; 38 A. 111; 39 A. 649; 40 A. 417;
44 A. 1059; 47 A. 1107; 50 A. 864; 107 La. 355, 376; 110 La. 399;
143 La. 87.

If he should fail in this duty and the passenger should
suffer injury, the carrier is liable in damages, unless he proves
that the damage was not his fault and was the result of the pas-
senger's own conduct or fault. 27 A. 378; 50 A. 864; 118 La. 4,
811; 121 La. 604; 126 La. 512; 144 La. 198.

A degree of attention beyond that given to an oridnary
passenger should be bestowed on one known to be affected by a
disability by which the hazards of travel are increased. 35 A.
204; 48 A. 831; 51 A. 1599.

The carrier should stop the train at the usual platform
for discharging passengers at the place of destination: x x x
if passengers are required to alight at any other point and in-
jury should result therefrom the carrier is liable. 110 La.399.

A passenger is bound to use only ordinary care and pru-
dence to preserve himself from injury. 107 La. 376.

The burden of proving contributory negligence lies with
him who alleges it. 145 La. 338, 87.

"Railroad companies will be held to accountability for misconduct of their servants and for defective appliances used in operating their trains. Their business subjects them to the risks of accidents, and they should make ample provisions against their happening. It is an implied condition on their part with each passenger that the latter shall not be put in jeopardy of life or limb by any fault, even the highest (slightest) of the servants of the company. This responsibility will be found the greatest safeguard against abuses & c". 145 La. 328. 16 C. J. Vo. Carriers § 1229, 1263, 1269, 1294, 1338, 1340, 1360.

The circumstances of the accident are thus related by the plaintiff:

The conductor or the brakeman got her by the arm to assist her, and when she went to put her foot on the stool it slipped from under her or broke, and she fell and became unconscious; at that time she weighed two hundred and ten pounds; she put her foot in the centre of the box.'

The defendants thus explain the accident.

John A. Landry testifies that he was the conductor at the time of the accident; when the train stopped at Gretna the opposite the six steps of the coach in which the plaintiff was were six or eight feet west of the brick platform; when the plaintiff

"stepped on the box, she stepped on the edge, and it

tilted towards me and she fell from it";

he held her by the arm as she stepped from the steps to the stepping box; there was nothing the matter with the stepping box; passengers had to step in the street and then go on the platform; the stepping box was not on the platform, but on the ground on the street, six or eight feet from the platform. Under instructions from the Court the witness attempted to tilt the stool by stepping upon it, but failed. He could not tell the cause of

668

plaintiff's falling.

Vernon C. Fagan is passenger agent for defendant; his testimony is practically the same as that of Landry; he too tried to tilt the box and was unsuccessful; the ground upon which the stool was placed was level.

George Willingham was porter on the train; the stool tilted when the plaintiff put her foot upon it; this witness tilted over the box by great effort two or three times, by putting his foot with about half of the sole of his shoe on the edge of the box, with the sole of his foot about one half inch from the corner.

Herbert Fink, a brother of the plaintiff, testifies that the ground on the west side of the platform, where the stool was placed, had been low and muddy, and that gravel had been put upon it lately, but that it was still uneven.

The theory of the plaintiff is that the stool was placed upon uneven ground, adjoining the platform, and for that reason tilted when plaintiff put her heavy weight upon it. The theory of the defendant is that the plaintiff carelessly put her foot upon the edge of the stool, and in that manner tilted it. Either hypothesis is fatal to the defendant. Of course, if it put the stool upon unsecure ground, too soft to resist the weight of plaintiff's body, it is liable. In directing passengers to land at a place outside of the regular platform, the defendant assumed liability for any injury arising therefrom. We believe plaintiff's theory is the correct one, as it is shown that neither the conductor nor the agent could tilt the stool upon a level surface. The trial judge adopted it.

Defendant's theory cannot help it. It was its duty to supply the passengers with such a stepping stool as would not tilt with ordinary use of it, whether the passenger put his foot upon the middle or upon the edge of it. Passengers cannot be held to study the exact spot upon which they must put their foot upon the

669

stool, under the penalty of being found guilty of negligence. When numerous passengers descend from a coach, they are usually in a hurry, jostled on all sides, and embarrassed with baggage of all kind. Especially is this the case with female passengers, Under these circumstances, passengers cannot be held to mathematical precision in stepping upon a stool. But plaintiff is not proven to have put her foot upon the edge of the stool. Only one witness testified that she did, and he was an employee of the defendant. The plaintiff testified that she put her foot in the middle of the stool. But even if she had put her foot upon the edge, that would not have caused the stool to tilt, for both the conductor and agent were unable to tilt the stool by stepping upon it, on the middle or on the edges. The plaintiff is not shown to have used the stool in an unusual way.

The case of Nicholls vs T. & P. RRd. 144 La. 197 quoted by defendant is not in point. In that case the Court did not find that the stool had slipped or tilted under plaintiff's foot. It found, on the contrary, that

"plaintiff's foot rested on the edge of the footstep and slipped off, and that the footstep did not move". p 198.

We think however that the damages allowed are excessive. The *only* physicians who examined plaintiff testify to bruises and contusions, painful but not serious. She says she kept her bed for two or three weeks and remained in the house two or three other months; but her testimony is weakened by that of the physicians.

Upon the trial of the case defendant objected to any testimony in support of damages on the ground that no specific injury, is alleged nor any specific damage, and the claim in globo is vague and indefinite. They rely on 42 A. 890; 105 La. 401; 35 A. 465; 51 A. 1023; 1 Ct. App. 47.

The trial judge overruled the objections quoting C. P. 343, 344; 10 A. 528; 37 A. 800; 50 A. 765.

Vagueness, want of precision, or generalities in the averments of a petition should be urged by exception filed in limine. C. P.332, 333; 37 A. 800; 50 A. 767 and authorities there quoted. 1 H. D. 1155; 52 A. 1442; 36 A. 553.

It is therefore ordered that the judgment herein be reduced from one thousand, four hundred dollars to one thousand dollars and as thus amended that it be affirmed, costs of appeal to be paid by plaintiff and costs of the District Court to be paid by defendant.

Judgment amended and affirmed.
April 10, 1922.