(80 South. 252)

No. 21523.

NICHOLLS v. TEXAS & P. RY. CO.

(Dec. 2, 1918.)

*(Syllabus by Editorial Staff.)*

CARRIERS ⬅➡346(3) — PASSENGERS — INJURY IN ALIGHTING—CONTRIBUTORY NEGLIGENCE.

In suit against a railroad for injuries, while alighting, to its passenger, a woman of 66, feeble, and with impaired eyesight, evidence *held* not to sustain judgment for plaintiff in that it showed that she was not without fault, having placed her foot at the side of the stool the railroad furnished for convenience in alighting, so that it slipped off and she fell.

Appeal from First Judicial District Court, Parish of Caddo; John R. Land, Judge.

Suit by Mrs. Martha Lane Nicholls against the Texas & Pacific Railway Company. From judgment for plaintiff, defendant appeals. Judgment set aside, and suit dismissed.

Howe, Fenner, Spencer & Cocke, of New Orleans, and Wise, Randolph, Rendall & Freyer, of Shreveport, for appellant.

J. C. Pugh & Son, of Shreveport, and Frank S. Craig and Parsons & Cook, all of Mansfield, for appellee.

PROVOSTY, J. Plaintiff fell while alighting from a train of the defendant company, and was injured, and sues in damages, charging negligence. When the step of a railway coach is too high from the ground for the passengers conveniently to get down, the brakeman puts upon the ground opposite to the step a boxlike footstool, or footstep, for the passenger to use in alighting. What caused the accident in this case was, either that this footstep was not resting evenly, or firmly, upon the ground, and, in consequence, turned over when plaintiff put her foot upon it in alighting, or else that plaintiff placed her foot so near the edge of this footstep that she obtained only an insecure footing, and her foot slipped off.

Much was said in the argument as to whether this suit is based on the contract of carriage, and, as such, is governed by the rule that a passenger without fault makes out a prima facie case against the carrier by proof simply of the accident and of the resulting injury; or as to whether the suit is ex delicto, and governed by the rule that a plaintiff alleging negligence carries the burden of proof throughout the trial.

We will not go into that question, as we find that the plaintiff was not without fault.

She was in her sixty-sixth year at the time of the accident. Her principal witness, a lady neighbor of hers at home, who, like her, had boarded the train at their home station, testified to her being a "small, light built woman"; "feeble," and of impaired eyesight. This witness says that she put her head out of the window to watch plaintiff get off, being prompted to do so by her concern about plaintiff's ability to get off safely, in view of her feebleness; that plaintiff was "feeling for the stepping box," and that she finally rested her foot "on the edge" of it, and it turned over. The brakeman who had hold of plaintiff's wrists, assisting her to get down, and the conductor, who stood about 60 feet off, and a witness who stood near, waiting to board the train as soon as the way should be clear, saw plaintiff's foot rest on the edge of the footstep and slip off, and the footstep not move. And a fourth witness, who was looking out of the coach window, and saw everything, says that the footstep did not move. Plaintiff's same neighbor lady witness says that plaintiff's husband and two other men got off ahead of plaintiff, stepping on this footstep in doing so. Other witnesses seem to have seen only plaintiff's husband precede plaintiff, but to have seen two other passengers get on afterwards, using this footstep without its position having

been changed after plaintiff had used it. Plaintiff herself cannot say whether the footstep turned, or what caused her to fall. She does not know whether she looked to see where she was stepping. Two witnesses who stood by watching her as she alighted say that she was not looking down, but forward. Defendant overwhelmingly established that the ground where the footstep was placed was composed of sand, gravel, and cinders, and firmly packed, and that the surface was level and smooth, free of obstructions of any kind. And, indeed the probability is that a railroad company will maintain in a smooth condition the ground where passengers are to get on and off at the station; and the probability is that a brakeman will not leave a footstep in a position where it will tilt when stepped on; and the probability is that if this footstep had been in that unstable position it would not have tilted for plaintiff alone, but for the other passengers also; and the probability is that a contrivance like this footstep would not turn over except under very great provocation, it being a sort of box made of thick wooden boards, with a rubber mat on the top, 14 by 11 inches at the top, and 19½ by 14 at the bottom, and weighing some 25 pounds.

The only corroborative testimony in the record as to the footstep having turned over is that of a witness who says that, hearing a scream outside, he went to the platform to see what was the matter; that plaintiff was on the ground, and the conductor came up and asked the brakeman what was the matter, and the brakeman answered that the footstep had turned over. This witness is contradicted by the brakeman and the conductor, and his statement is rendered improbable by the fact that the conductor, who was an eyewitness to the occurrence, would hardly have inquired what was the matter, and, at all events, would not have sought to investigate what was the cause of plaintiff's fall before plaintiff had been lifted from the ground; and by the further fact that none of the other witnesses seem to have heard the said scream or the said question and answer.

In the face of all this positive testimony, harmonizing as it does with all the probabilities of the situation, plaintiff's learned counsel would seek to make out a case by arguments ingenious and lawyerlike, and strongly put, based upon the fact that on the day of the accident the claim agent of the defendant company directed the roadmaster to make an examination of the station ground, to ascertain whether there were any large clinkers or other obstructions which might have caused the footstep not to sit evenly and firmly. The gist of these arguments is that no investigation would have been made of the reason why the footstep had turned if it had not in fact turned; and that the instructions were to ascertain what had caused it to turn. The answer is, that the record does not establish that the instructions were to ascertain what had caused the footstep to turn, but that they were, in substance, simply to examine the ground at the landing place and ascertain its condition. Any lawsuit growing out of this accident to plaintiff would necessarily have to be based upon the supposed bad condition of the landing place, since there could not possibly be any contention that the coach steps or the footstep were not in proper condition, or that the train was not stationary, or that the brakeman was not at his post assisting the passengers, or that there was any other thing or circumstance from which a liability on the part of the railroad could possibly be sought to be deduced. Knowing this, it was but natural for this agent to direct the roadmaster to make this examination.

The judgment appealed from is set aside, and the suit of plaintiff is dismissed, at her cost.