## BASS v. ILLINOIS CENTRAL RAILROAD COMPANY

---

(January 18, 1926. Opinion and Decree.)
(February 15, 1926. Rehearing Refused.)
(March 30, 1926. Writs of Certiorari and Review Denied by Supreme Court.)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Appeal—Par. 630.**

Though a judgment be based on verdict of a jury, it will be reversed and set aside by the appellate court where the verdict is clearly against the preponderance of evidence.

2. **Louisiana Digest—Carriers of Passengers and Goods—Par. 42, 43.**

Where a plaintiff, a passenger, seeking damages from a carrier for injuries sustained while attempting to leave a railway train which has stopped at an avenue crossing in city limits, charges several acts of omission on the part of the carrier as faults or negligence causing the accident, and where on trial it is established as a fact by plaintiff's own testimony that only one of said acts could have caused the accident, and where the preponderance of evidence clearly establishes that the defendant was not negligent in the respect ultimately claimed, recovery will be denied.
**(Civil Code, Art. 2315. Editor's note.)**

Appeal from Civil District Court for the Parish of Orleans, Division "C". Hon. Sam A. LeBlanc, Judge.

Action by Carmen Bass against Illinois Central Railroad Company.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

Jos. H. Brewer, of New Orleans, attorney for plaintiff, appellee.

Lemle, Moreno & Lemle, of New Orleans, attorneys for defendant, appellant.

## OPINION

BELL, J. This is an action in damages for the sum of $10,250.00 for physical injuries alleged to have been sustaned by the plaintiff while attempting to descend from the platform of one of defendant's passenger coaches forming part of a train which had stopped just beyond the point where South Carrollton avenue intersects defendant's tracks and near the corner of Colapissa street, in the city of New Orleans. The accident occurred about 10:15 P. M. on May 21, 1922. By a jury's verdict (9 to 3), plaintiff was awarded judgment for $1900.00. Defendant has appealed.

Alleging the place and date of the accident, as above stated, and that the train had come to a full stop, plaintiff avers in her petition, as various causes for the accident, the following:

"That your petitioner proceeded to the platform of the coach of said train on which petitioner had made a trip from Hammond, Louisiana, for the purpose of alighting from said train, as aforesaid, and relying upon the fact that said employee of the defendant herein had called the said stop, signifying that passengers were permitted to alight at such place, and that as petitioner reached the steps of the platform of said coach, owing to the fact that it was quite dark, that no lantern or other light had been provided or was present, and the entire absence of the stool, small bench or step usually provided for passengers to assist them in alighting, your petitioner sustained a severe fall, resulting in severe and painful injuries to your petitioner, as herein set forth.

\* \* \* \*

"That said injuries to your petitioner were caused by the negligence of the employees, agents and servants of the said Illinois Central Railroad Company, acting within the scope and cares of their employment, as aforesaid, first, in calling said stop and indicating that passengers were permitted to alight at the intersection of Carrollton avenue and the tracks of the Illinois Central Railroad without providing the proper facilities for permitting passengers to alight, and secondly, in failing to have an employee present at said platform steps for the purpose of assisting passengers to alight, or at least warn them of danger."

Defendant avers by denying the accident and, further answering, avers:

"That the train in question was properly manned, equipped and operated; that the place at which passengers alight at South Carrollton avenue was properly lighted with proper facilities for permitting passengers to alight, and that if paintiff was injured in alighting from said train, as alleged, which is denied, it was due entirely to her own fault and negligence and through no fault or negligence of defendant, its agents or employees."

It is clear, from the averments of plaintiff's petition that the only acts of negligence charged against defendant are faults constituting acts of omission respecting a carrier's duty toward a passenger while the latter is in the act of alighting from

its train. Assuming that the plaintiff was not herself in any manner careless or at fault while attempting to alight from the car, it appears from an analysis of her petition that the followng acts of omission are charged against defendant:

First. Not having stopped at a regular station, but at some unusual or makeshift stopping place.

Second. Having an improperly lighted station.

Third. No facilities for alighting from the train, such as a stepping stool.

Fourth. No employee to assist passengers in alighting or to warn them of danger.

Fifth. Darkness on the step and on the platform of the car. Plaintiff's own and positive testimony given on direct examination and reiterated on cross-examination entirely obviates the necessity of considering any of the above theories as to the cause of the accident, except the last theory, that is, insufficient light of the steps and of the platform of the car.

On direct examination:

"A. Well, I figured that as everybody else was getting off, and as I live so near to Carrollton avenue, that I would get off there, too.

"Q. Then what did you do?

"A. It was so dark and nobody there to get you off; the only thing that I can remember was when I knocked my face and after that I was unconscious.

"Q. Where did you knock your face?

"A. I knocked my face as I fell, and after that I was unconscious.

"Q. From where did you fall?

"A. Right from the platform.

"Q. The platform of what?

"A. Of the coach."

On cross-examination:

"Q. You were asked this question: 'Where did you knock your face?' and your answer was: 'I knocked my face as I fell, and after that I was unconscious.'

"A. Positively, I do remember knocking my face and that was all; that was on the side of the train, I guess.

"Q. You were asked: 'From where did you fall?' and you answered: 'Right from the platform.'

"A. From the platform was where I fell.

"Q. You are sure you fell from the platform?

"A. I am most sure; it must have been from the platform.

"Q. 'It must have been from the platform'—in other words, you were standing on the platform of the car and you fell down?

"A. I was coming down the step, and it was so dark I guess I went off.

"Q. Now, is it not a fact that you fell on your face?

"A. No, sir; I knocked my face as I was going down.

"Q. You hit your face before you hit the ground?

"A. Positively.

"Q. Did you hit your face on the side of the car?

"A. That was the only place I could hit it, because I remember hitting my face and I could feel myself going.

"Q. You fell down and hit the side of your face as you were falling to the ground?

"A. Yes, sir.

"Q. And your fall started up on the platform of the car?

"A. Sure, because I remember knocking my face."

The record shows that the train on which plaintiff was a passenger consisted

of thirteen coaches; that she had been riding in the coach next to the last, and was one of many excursionists occupying the two rear coaches of the train which had come to a stop after clearing the city side of South Carrollton avenue. Attempting to alight from the front platform of the coach, that is, the end nearest the city, plaintiff is shown by the evidence to have been standing, while on the platform, a distance of about 78 feet from the sidewalk corner of South Carrollton avenue and Colapissa street. At this corner city lights were shown by the evidence to have been burning. There is conflicting testimony as to whether these lights sufficiently lighted the station platform or the car platform from the distance mentioned, or whether the light was obstructed by certain nearby buildings and lumber piles. These facts are immaterial, for two reasons: Plaintiff was not stepping upon or using the station platform when she fell, and, furthermore, there is abundance of evidence that the car platform was lighted at all times by the oil lamps of the car, all of which lamps were burning at the time of the accident and reflecting light on the platform through the open doorway of the car.

Julius Wendling, a witness for plaintiff, who had preceded him in attempting to leave the car. On direct examination he states there was no light on the platform, but when confronted, upon cross-examination with a written statement given by him six months prior' to the trial, he testified:

"Q. Now, your testimony grows substantial in what you just stated, except as to one or two breaks. Didn't you state that at the time the train came to a stop you and Miss Tabry, who was your partner on the trip, went on the platform to get out?

"A. Yes, she was back of me.

"Q. And while there was no light on the ground, that there was some light on the train?

"A. In the train, yes, and a kind of reflection to the platform, but not much.

"Q. And that the light from the train threw down this light on the platform?

"A. Yes, sir.

"Q. And that you had sufficient light by which you could see to descend?

"A. I do not know about that, it was pretty dark then.

"Q. Didn't you make that statement as follows:

" 'Q. But there was light enough, you could see?

" 'A. Yes, there was enough light, you could see, sure'?

"A. To the exit?

"Q. Yes?

"A. I know I said I could see the light from the train to the platform, but I could not see going out from the steps.

"Q. I don't want to trip you or anything like that, Mr. Wendling, all I want is to get at the facts, and I know you are trying to state the facts as you remember them. What I am asking you now is, didn't you make that statement to Mr. C———, who was the stenographer who took the statement in that case: 'Yes, there was enough light, you could see, sure'.

"A. I did not specify 'see where', but I could see to the platform when I had gotten out, but going down the steps there was absolutely no light, it was absolutely dark.

'.Q. But you did make that statement I just read you?

"'A. Yes, in regard to that platform.

"Q. 'There was enough light, you could see, sure'?

"A. To see to what, to see to where?

"Q. See to get off the train?

"A. No, you could not see to get off; it was dark on the steps. There was only light on the platform.

"Q. Now do you deny making the statement that was taken down in shorthand, that 'there was enough light, you could see, sure', to get off the train?

"A. That one subject, yes; I said on the platform or I meant on the platform.

"Q. But you made that statement, didn't you?

"A. I did if it's written down, I did, yes, sir."

Plaintiff herself testifies, while under cross-examination, that there was sufficient light while she was out on the platform for her to see the shadow of her young nephew who was being carried in the arms of a friend preceding her.

Erickson, a conductor on the train, testifies on cross-examination as follows:

"Q. What kind of light did the coaches 1503 and 3726 have?

"A. Oil lamps.

"Q. Any lights on the platform?

"A. Yes, sir, they have them on the platform.

"Q. What kind of lights?

"A. Lights at the door, there is an oil lamp.

"Q. Were any of these lamps lit that night?

"A. To my recollection, yes.

"Q. And some may not have been lit?

"A. They were all lit; I went back at Hammond and looked at them.

"Q. You don't know whether any went out?

"A. They didn't, because I worked the train at every station."

Other evidence offered for defendant establishes the fact that the passengers (some 100 or more) had sufficient light to get off the train, and that all passengers, several of which were in plaintiff's car, alighted safely. The train being at rest, the burden was upon plaintiff to clearly establish the cause of the accident which befell her. There is nothing from the evidence above noted, nor as otherwise shown in the record, which accounts for the accident, and we are forced to conclude that there was no condition of darkness on the platform of the car which could have caused plaintiff to fall therefrom.

It is with reluctance that appellate courts reverse a judgment based upon the verdict of a jury, having for its particular duty that of determining issues of fact. It is nonetheless our duty to review the facts and to reverse the findings when a preponderance of evidence indicates, as in this case that the jury's findings are clearly erroneous.

In the case of Chisolm vs. Roppollo, 1 La. pp. 269, the rule of law which compels appellate courts to reverse verdicts and judgments resulting from erroneous findings of fact has been recently stated, upon abundant authority therein noted.

Even though the place at which plaintiff was invited to alight was an unusual one, not a regular station, this fact itself would not impose upon the carrier the duty of exercising unusual care and of giving unusual warning or notice to its passengers.

Clogher vs. N. O. Ry. & Lt. Co., 143 La. 85, 78 South. 247; Freeman vs. N. O. Pub. Serv. Inc., 1 La. App. 600.

We conclude, from the facts in this case, that the plaintiff has failed to establish with any reasonable certainty that the defendant was guilty of any acts of omission, or that it was in any manner negligent in the operation of the train upon which plaintiff was injured.

It is therefore ordered that the judgment herein be reversed and set aside, and that there now be judgment in favor of defendant, reversing plaintiff's demand at her cost in both courts.