DEBLANC v. T. & P. RY. CO., Appellant

(May 23, 1927. Opinion and Decree.)

(*Syllabus by the Court*)

1. **Louisiana Digest—Carriers of Passengers and Goods—Par. 25, 38.**

Where a passenger seeks damages from a carrier for injuries sustained while alighting from a train, and the evidence fails to establish any negligence on the part of the carrier, recovery will be denied.

2. **Louisiana Digest—Carriers of Passengers and Goods—Par. 25, 38, 55; Negligence—Par. 25.**

Where the injury to the plaintiff was not caused by any defect in the stepping-stool, but was attributable to the negligent use of it by stepping upon the side of it instead of upon it, the carrier will not be held liable.

(See Civil Code, Article 2315. Editor's note.)

Appeal from Twenty-eighth Judicial District Court for the Parish of St. Charles. Hon. Prentice E. Edrington, Judge.

Action by Mrs. A. DeBlanc against Texas & Pacific Railway Company.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

C. A. Buchler, of New Orleans, attorney for plaintiff, appellee.

Spencer, Gidiere, Phelps & Dunbar; John E. Fleury, of New Orleans, attorney for defendant, appellant.

CLAIBORNE, J. This is a damage suit for physical injuries.

The plaintiff alleged that on November 13, 1917, while she was a passenger on one of the trains of the defendant railroad she was injured through the negligence of its employees; that "she boarded one of defendant's trains in the city of New Orleans and upon reaching her destination at Luling, La., in this parish (St. Charles), at about 6:30, attempted to alight from the said train and the agent and employee of the defendant company failed to place the footstool in the proper location and seen (seeing?) that petitioner was about to fall kicked the said footstool, thereby tripping petitioner and causing her to fall prostrate upon the ground and injuring her as hereinafter stated. That it was quite dark at the time and the agents and employees of the defendant company failed to provide the proper light, so as to enable petitioner to see and said employees while in the performance of their duties failed to properly place the footstool so as to enable petitioner to properly alight from said train. That petitioner was very much humiliated and, due to the negligence of the employees of said defendant company, suffered a severe sprain of the left ankle joint with partial separation of the fibia fabular articulation and also that of the second row of tarsal bones, which injuries were very painful for at least four weeks, during which time petitioner was entirely incapacitated; and petitioner alleges that she is still suffering from the said in-

juries and it is possible that said injuries will be permanent in character.

She claimed the following damages:

Humiliation, pain and suffering____$2000.00
Loss of time and inability to attend
    to her household duties _____ 1000.00
Doctor and medicine _____ 200.00
Permanent injuries. _____ 1000.00
                                        _____
    Total _____$4200.00

The defendant denied all the allegations of the petition and averred "that if said plaintiff was injured said injuries were caused through no fault of your respondents, their agents, officers or employees, but that the said injuries were caused through the gross carelessness, recklessness and negligence of the plaintiff which contributed to the accident".

There was judgment for plaintiff for $1000 and the defendant has appealed.

There are therefore three charges of negligence alleged against the defendant:

1st. That it failed to put the footstool in the proper place.

2nd. That an employee kicked the footstool, thereby tripping plaintiff and causing her to fall; and

3rd. That the employees of the defendant failed to provide proper lights to enable plaintiff to see and properly alight.

The plaintiff lives at Des Allemands; she describes how she fell:

"When I went to get off the auditor was there, and instead of having the stool right under the step, he had it at a little distance under the step, and as I went to step he noticed the mistake, and pushed the stool, and I slipped, and my right foot hit up against the rail of the track."

And she fell, and her husband helped her up, and also Dr. Johnson, who was there, assisted her; there was no one else; the train auditor got off and took the stepping-box and dropped it on the ground and stood near facing the plaintiff and looking straight up into the coach. The plaintiff repeats:

"Instead of putting the stepping-box right under the step of the train he put it a little distance, and I went to get off and he must have noticed his mistake, saw my foot go further down, and he pushed the box and it hit me up against the shin and tripped me, and I fell and my right foot hit up against the rail underneath the train."

The auditor put the step too far out from the step; when she came down, she did not see the step there until she went to get off; her foot went down between the step and the box; she did not see the box at all; she felt where it was, and she fell right there; her right foot went between, and when the auditor pushed the box it hit against her left foot; she did not see the box, but she noticed it when the auditor pushed it and she felt it; it was too far from the step; it was fourteen inches from the step; it was too dark, she could not see it; when she went down, her right foot went down to the ground between the stepping-box and the rail of the track; her husband was right there; she fell back; the depot was further up towards Hahnville; the step of the coach from which she got off was a short distance before reaching the depot; her husband was there right alongside of the train; closer to the train than the auditor; the step of the coach from which she got off

was about 30 feet away; Dr. Johnson was standing right behind her, up in the vestibule between the two coaches; Dr. Johnson asked her if she was hurt and she told him no.

She does not know whether it was a vestibule coach or not.

A. DeBlanc, plaintiff's husband, testified that when his wife "went to get down the auditor pushed the stool, and she put her foot down; he pushed the stool towards the train and she fell over".

There was no other witness to the accident, on the part of the plaintiff, except Dr. Johnson.

On behalf of the defendant H. S. Philips, conductor of the train, testified that it was his duty to look after the train; that no one complained to him of having been hurt.

H. A. Manning testified that he was auditor on the train; that his duties consist in collecting transportation, handling of stepping-boxes and unloading passengers; when the train stopped, he got down from the coach and placed the stepping stool in a position to unload passengers; two passengers got off before the plaintiff, on the same stepping stool; neither he nor anyone else removed it after he had placed it in position; Mrs. DeBlanc just barely touched the box with the front end of her foot, and fell, that is her feet spread on the ground and she stumbled but did not fall, when her foot practically missed the stepping-box; he "did not kick it at all with any foot"; the stepping-box was not tilted over, it remained in the same position in which he placed it; after he placed the stepping-box in the position that it was in he at no time touched it or moved it, or kicked it while Mrs. DeBlanc was getting down, or while any other passengers were getting down.

Dr. Johnson, plaintiff's witness, is acquainted with the plaintiff; he was in the same coach with her at the time of the accident; he accompanied her to the vestibule when she was about to get out with a view of assisting her to alight. He was speaking to her while he went to the door.

He testified:

"Well, as I said before, I walked to the end of the car with her, and it was my intention to get off the train myself and help her; but there was someone waiting there for her, and, as she got out, she fell, and after she fell, why I got off the train myself and I assisted this party (some relative of theirs I think), I assisted him in raising Mrs. DeBlanc up on her feet again."

"Q. And you say you saw her fall?
"A. Yes. sir.
"Q. You don't know how she fell, however?
"A. No, sir.
"Q. You don't know whether she missed the step box, or not?
"A. No, sir.
"Q. You never saw that step box moved, did you?
"A. No, I did not.
"Q. You were right up on the platform, were you not?
"A. Yes, sir.
"Q. You could see to the ground, standing on the platform, could you not?
"A. Yes, I could see the ground well enough.
"Q. You didn't see the auditor kick the box and trip her, and cause her to fall?
"A. No, sir, I don't know what caused her to fall.
"Q. Did you see the auditor at any time, after that train stopped, put his

hand on the step box or put his foot on it, or kick it, or anything like that?

"A. No, sir.

"Q. Were you in a position where you could see everything down on the ground?

"A. Yes, sir."

This testimony on behalf of the defendant is alone sufficient to destroy the testimony of the plaintiff and of her husband concerning the manner of the accident, for witnesses are weighed, not counted.

The testimony of the plaintiff is not convincing. Her petition is not attested by her, but by her attorney. Her damages are grossly exaggerated. She claims for doctor and medicine and other necessary treatment $200. The case was tried six years after the accident, and yet she admits that she was never presented with a doctor's bill nor did she pay any. Her doctor testified that she never paid him anything; that he has no recollection of having sent a bill and probably had no intention of charging either.

She claims $1000 for loss of time and inability to attend to her household duties. One of the items is $1000 for the pairs shoes she has ruined. Hiring help to take care of her "two babies". The husband testified that they had only one child. She hired two helps at the time. She did not put down what they cost, she had not the least idea what she paid them; does not remember their names, nor how long she employed them. She and her husband say that at the time of the accident it was dark and foggy and there were no lights, and plaintiff could not see the stepping stool, yet they both saw the auditor push the stepping stool. But the other witnesses say it was only getting dark and that there were sufficient gas lights from the interior of the coaches and from the vestibule lights.

Although plaintiff's husband says that the auditor kicked the stepping stool, and thus tripped his wife and caused her to fall, he was asked:

"Q. Did you say anything to the train auditor about this accident at the time?

"A. Yes, sir; I remonstrated with him and asked him where was his light.

"Q. You asked him where his light was?

"A. Exactly, where was his light."

He repeats that testimony twice.

Not a complaint about pushing the stool.

Our conclusion is that the plaintiff, in alighting from the steps of the coach, did not extend her foot far enough to reach the stepping stool, and in that manner her foot descended in the vacant space between the coach steps and the stepping stool, and slipped along the side of the stool and caused her to fall.

Plaintiff's husband testified:

"Q. Could you see how far he (the auditor) pushed it (the stepping stool)?

"A. Well, he pushed it that far, my wife's foot had straddled this, this way, and when he pushed it, he tripped her.

"Q. In other words, your wife stepped down on the space, in the seven-inch space between the edge of the lower step of the coach and the edge of the stepping-box that was down on the ground?

"A. Yes, sir.

"Q. That is it exactly?

"A. Yes, sir.

"Q. She stepped in between that seven-inch open space?

"A. Yes * * *.

"Q. As I understand, she stepped down between the seven-inch space, that is, be-

tween the edge of the stepping box towards the train step?

"A. Yes.

"Q. And the edge of the lower train step, towards the box, there was a seven-inch space?

"A. Yes.

"Q. She stepped in there?

"A. Yes.

"Q. And you say she tripped and fell?

"A. Exactly."

In the case of Scott vs. Vicksburg R. R., 150 La. 537, 90 South. 840, the court said on page 546:

"As to the law of the case, we are of the opinion that, where a carrier of passengers furnishes a stepbox or footstool to facilitate them in boarding or alighting from its train, it is bound to see that such appliance is safe as to strength, is so constructed as not to be readily overturned, is kept in proper condition, and when set out for use of passengers is placed upon a level and stable surface, but that the carrier is not the insurer of the passenger against the consequences of his own negligence, and where, as here, the passenger is injured in attempting to use such an appliance without looking at it, and stumbles over or against it when he should have stepped on it, his injuries are attributable to the misuse of the appliance and not to any defects or inadequacy in the box or in its surroundings, and the carrier is not liable for the injuries."

To the same effect is Nicholls vs. T. & P. Ry., 144 La. 197, 80 South. 252, in which the court held that the plaintiff "was not without fault, having placed her foot at the side of the stool the railroad furnished for convenience in alighting so that it slipped off and she fell".

See also Bass vs. I. C. R. R., 4 La. App. 175. All the presumptions and probabilities are that the auditor in the habitual performance of his daily duties placed the stepping stool in its proper and customary place and the testimony does not overcome that presumption.

We have failed to discover any negligence on the part of the defendant or any act on its part which could have brought about the accident.

On the other hand, the evidence satisfies us that the plaintiff was careless in the use of the stepping box, that she did not put her foot upon the box, as she should and could have done had she used proper care, but that she put it upon the side of the box and thus stumbled and fell.

It is therefore ordered that the judgment herein be reversed and set aside; and t is now ordered that there be judgment in favor of defendant rejecting plaintiff's demand at her cost in both courts.