Plaintiff was knocked down and injured by a bicycle, ridden by a negro boy, as he alighted from a trolley bus of the City of Monroe, traveling southerly on South Second Street. He sued the city and William Booth, operator of the bus, and Indemnity Insurance Company of North America, carrier of public liability for the city, to recover damages allegedly sustained by him as a result of the accident.
[1] The City of Monroe owns and operates a system of trolley busses throughout its territorial limits and makes charge for transporting passengers thereon. This is not done in the city's governmental capacity. Therefore, the legal principles and requirements applicable to private carriers of passengers are likewise applicable to the City of Monroe.
The facts of the case, with little exception, are not in dispute.
Plaintiff worked in the city many blocks from where he lived on South Second Street, near the center of the block, bounded on the north by Orange Street and on the south by Apple Street. He rode the bus each evening from work to his home. The evening of the accident he boarded the bus, paid his fare as usual, and says he stood up until he alighted. He testified that when the bus was near the middle of the block north of Orange Street he asked the operator to put him off at that street, but he is not certain his request was heard. The operator is certain no such request of him was made. Plaintiff also testified that after the bus passed Orange Street he again informed the operator of his desire to get off and that pursuant to this request the bus was stopped in front of his home where the accident occurred.
South Second Street carries a slab of pavement 18 feet wide along its center, which is bordered on each side by a strip of asphaltic surfacing four or five feet wide; and at the point where the bus stopped a shallow ditch or depression, at the time covered with grass, adjoins the asphalt. The bus was pulled to its right and stopped with its right wheels near the center of the asphalt strip, several feet from the west edge of the ditch. Plaintiff fell partly upon the asphalt and partly upon the grass in the ditch.
The bus passed the boy on the bicycle about the distance of two blocks north of the locale of the collision. As this was done the speed of the bus was accelerated in the hope of preventing the boy from catching hold of its rear end to be pulled along as was the practice of cyclists going southerly on South Second Street. To allow the bus to pass the boy drove slightly to his right from the concrete on to the asphalt. He did not at any time, after being passed by the bus, travel on the left side of the street, but tried to pass the bus on its right side in violation of ordinance of the city and laws of the State.
When the boy observed that the speed of the bus was being reduced, apparently preparatory to making a stop (he believed at Apple Street), he increased his own speed in the hope of it before Apple Street was reached. He was only a few fect behind the bus when it stopped. He continued forward and ran into plaintiff as he was making the first step after alighting *Page 495 
from the bus. The bus at that time was standing still. When the bus stopped plaintiff was standing in front of the door and stepped out as soon as the doors were opened, by the operator. He had not seen the boy on the bicycle prior to being run into.
Various acts of negligence on the part of the bus operator are alleged upon as causing the accident and consequent damage. The following is a paraphrase of these allegations, to-wit:
That the operator did not maintain proper lookout for traffic, and did not sound the horn to warn the cyclist of his purpose to stop the bus in the middle of the block; that the operator did not inform plaintiff of the dangerous situation he had created by stopping the bus at the time and place it was stopped; that he breached the contract of carriage by not stopping the bus at Orange Street, the regular stopping place, and allowing plaintiff there to alight; that by stopping the bus in the middle of the block at the time and under the then existing circumstances, he breached the contract of carriage in that petitioner was not put off at a place of safety as required by law; that as the operator had just seen and passed the boy on the bicycle, he was negligent in not further looking, when about to stop the bus, to ascertain if the boy was still following on the bus' right side; that the bus should have been pulled farther over toward the ditch or depression to obviate plaintiff's alighting in a lane of traffic, and that had this been done the cyclist could not have passed the bus and collided with plaintiff.
The city and William Booth filed joint answer. The insurance company filed separate answer which is in effect a general denial save that it is admitted that a policy of insurance was issued by it to the city wherein and whereby it obligates itself to indemnify and protect the city from loss and damages in excess of $10,000, arising from any one accident.
The other defendants deny that the accident occurred through negligence of any character on the part of Booth. They aver that plaintiff was let off of the bus at a place of safety; that the bus was stopped there as a favor and accommodation to plaintiff as had often been done at his request'and that of other members of his family. They deny that plaintiff requested to be put off at Orange Street. They further deny that the operator knew the cyclist was following the bus and, therefore, had no reason to think he would try to pass it on the right side in violation of law; that the contract of carriage with plaintiff was not breached since he was discharged from the bus without injury at a place of safety; that after being thus discharged defendants' responsibility for his safety ceased. These defendants generally aver that plaintiff was injured entirely because of his own negligence and that of the boy on the bicycle. However, contributory negligence as a bar to plaintiff's recovery is not pleaded. These defendants admit that plaintiff was slightly injured in the accident but aver that he has fully recovered therefrom.
Plaintiff's demand was rejected and his suit dismissed. He appealed to this court.
[2] We believe that plaintiff is mistaken in asserting that he requested the bus operator to stop the bus at Orange Street to allow him to alight. It is much more convenient for him to get off in front of his own home which adjoins the west side of South Second Street. He had many times done this prior to that time. Had he gotten off at Orange Street he would have had to walk along the street to his home as there was no sidewalk on the west side of South Second Street between Orange Street and his home. It is reasonable to conclude, as we do, that the operator assumed that plaintiff wished to get off of the bus in front of his home, and, for this reason, he believed he was conferring a favor upon him in stopping where he did. It was night and the locus was poorly lighted. On this phase of the case, we do not find that the bus operator was to any extent negligent.
The more serious question in the case, and the one upon which a decision must turn, is whether under the existing facts and circumstances the operator failed in his duty to plaintiff by allowing him to alight from the bus without advising him to be on the lookout for the boy on the *Page 496 
bicycle who might attempt to pass the bus on its right side. To express the proposition more tersely, under the facts and circumstances then existing — was the place where the bus stopped to allow plaintiff to alight a safe one? Under normal conditions no reasonable objection could be registered against the safety of the locus where plaintiff was virtually invited to alight, but the proximity of the boy on the bicycle and the operator having good reason to believe he would likely attempt to pass the bus on its right side when it slowed down, as was done frequently by other persons riding bicycles on this street, materially alters the status of things. The testimony of the bus operator touching this question is quite frank, and we believe convicts him of negligence of a character adequate to entitle plaintiff to recover. We here quote salient parts of his testimony, to-wit:
"Q. What was the purpose of speeding up the bus other than just to pass the bicycle, if any? A. I did that in order for the bicycle not to pass me on the right hand side when I went to make my stop.
"Q. In other words, you speeded up the bus some with the idea of gettting down to Mr. Crawley's home and letting him off before the bicycle arrived? A. That wasn't my idea; I thought the negro was going to hang on the tail end of my bus. They have done that often down there.
* * * * *
"Q. Mr. Booth, since you had a feeling that the bicycle driver might take a hold of the bus, and you speeded up some, why did you not look back after passing him to see whether or not he had taken hold of the bus? A. Well, when I approached Mr. Crawley's house, that is, when I slowed down as quick as I did, if the negro had been hanging on to the tail end of the bus he would have went (sic) past the bus before I stopped.
"Q. So you slowed down in order to give him a chance to have gotten by had he been hanging on it? A. That is right.
"Q. And having slowed down in this manner, when you stopped, you figured he had not been hanging on to the bus? A. I felt sure that he had went (sic) to the left side of my bus to pass."
But, if the boy had gone to his left to pass the bus, Booth would have seen him as the driver's seat is on that side of the bus. The fact that he did not see the boy pass should have created in his mind the conviction that he would try to pass on the other side.
[3] The general rule defining the degree of care and the character of duty due by a carrier to its paying passengers is well expressed in 10 Am.Juris. § 1236, p. 157, as follows: "The carrier is required to use the highest degree of care, diligence, and skill, and it is liable for the slightest neglect or lack of care resulting in injury to its passengers, qualified only by the reciprocal duty of the passenger not to contribute to such injuries by any want of ordinary care on his part."
[4, 5] There is no doubt that the boy on the bicycle was grossly negligent in trying to pass the bus on its right side, but the fact that the negligence of this third party contributed to the accident will not exonerate the city from responsibility for its agent's negligence. This question is well settled by jurisprudence over the country. The applicable principle is couched in the following excerpt from 10 Am.Juris. § 1242, p. 162, to-wit: "A carrier that fails in its duty to a passenger is responsible for the consequences of its negligence irrespective of the fact that the negligence of a third party contributed to the injury. Although such third party acted entirely independently of the carrier, the carrier is as much under a duty to guard against the results of the acts of third persons as of any other cause the operation or intervention of which it can reasonably anticipate." Hughes et al. v. Southwestern Gas Electric Co., 175 La. 336, 143 So. 281.
In the present case it is certainly obvious that the bus operator, had he exercised ordinary forethought and care, would have anticipated that the cyclist would endeavor to do that which he did. Had he warned plaintiff of the possibility, yea, probability, of the bicycle passing on his side of the bus at that time he would have fully discharged *Page 497 
his duty as the city's agent. Instead of doing this, he remained silent at a time he should have spoken; and to this silence may be accredited plaintiff's failure to take the necessary precaution for his own physical safety. Surely, had he been warned of the impending danger, he would not have alighted until such danger had passed.
Defendants cite the following cases in support of their contention that the bus was stopped at a safe place for plaintiff to alight, to-wit: Waldron v. Southwestern Bus Co.,42 Ohio App. 549, 182 N.E. 596; Madden v. Red Line Service, Inc., Mo. App., 76 S.W.2d 435; Clogher v. New Orleans Railway 
Light Co., 143 La. 85, 86, 78 So. 247.
We have carefully read these cases. The facts of each are very much dissimilar to those of the case at bar and, of course, are not controlling of this case.
[6, 7] In supplemental brief defendants argue that Booth had the right to assume that the cyclist would obey the law, and to act on the assumption. Several Louisiana cases are cited and relied upon to support this position. There can be no well founded dissent against the stated legal principle, but as said heretofore, the facts and circumstances of a case may affect one's right to implicitly rely upon another to obey the law. The facts of this case, we are convinced, remove it from the general rule. As contended the violation of a traffic law is negligence per se, but it only becomes actionable when such negligence is the or a proximate cause of the injury resulting from such negligence.
[8] The concurring negligence of Booth and the boy on the bicycle produced the accident. It is our opinion that the negligence of each was a proximate cause of such accident.
At time of injury plaintiff was fifty-six years old. The principal injury he sustained was an impacted fracture of the neck of the left femur. The end of that bone was forcefully driven against the socket and crushed to some extent. The ultimate result is shortening of the left leg about one-half inch. There were other less serious injuries to adjacent bones but no permanent ill effects resulted therefrom. Recovery from all of these injuries was considered by the doctors as satisfactory in view of plaintiff's age. Due to other physical ailment an operation was not performed. Had this been done perhaps there would have been no shortening of the leg.
Plaintiff was badly shocked from the accident and suffered severe soreness and pain of the body, especially about the left hip. The pain had not entirely disappeared when the case was tried almost a year subsequent to the accident. He was confined to bed three months and to his home one month thereafter. He was forced to use two crutches for approximately three months and one crutch for another month. To some extent, estimated by one physician at twenty-five per cent, he is permanently disabled. His ability to lift heavy objects has been destroyed. As the femur is the weight bearing bone it pains him and is made uncomfortable after he stands upon his feet for a considerable time.
At the time injured plaintiff was performing the duties of operator of an elevator in a large office building in the City of Monroe, at $21 per week. He resumed that work nine weeks prior to trial. He is able to do work of this character or any other work not involving strain that allows him to sit upon a stool.
[9] Plaintiff sued for and is entitled to recover $500 for loss of wages. On all other items for which damages are claimed we think he is entitled to judgment for $3000.
Under the limitation of liability of the insurer, it is not responsible for payment of any part of this judgment.
Therefore, for the reasons hereinabove given, the judgment appealed from is reversed and there is now judgment in favor of plaintiff, Robert Page Crawley, and against the City of Monroe and William Booth, defendants, in solido, for the sum of $3,500, with legal interest thereon from judicial demand herein until paid, and for all costs of this suit. *Page 498