REID, Judge.
This is a suit brought by plaintiff, George W. Burt Jr., for damages, filed July 5, 1957, claiming that he ordered 100 tablets of nitroglycerin from Robb’s Drug Store and received atropine tablets instead. The petition alleges that after consuming 30 to 35 atropine tablets from August 5 through August 7, plaintiff received injuries consisting of temporary partial paralysis of both legs, numbness of his arms, injury to his eyes and an aggravation of his heart condition as a result.
*114 This suit was filed against Elmo Robb, doing business as Robb’s Drug Store and his insurer, Employers Liability Assurance Corporation, Ltd. The original petition prayed for a solidary judgment in the amount of $20,200.00, but by an amended petition this amount was raised to $52,000.00.
Subsequently the plaintiff dismissed as of non-suit without prejudice the plaintiff’s claim against Elmo Robb, individually, or doing business as Robb’s Drug Store, leaving only the insurer, Employers Liability Assurance Corporation, Ltd., as the defendant.
After a trial on the merits, the trial judge for oral reasons assigned, rendered a judgment in favor of the defendant and against the plaintiff, based on the proposition that the plaintiff failed to prove negligence on the part of defendants assured by a preponderance of the evidence and the failure to sustain the burden of proof.
Plaintiff subsequently filed a motion for a new trial, which was overruled, and he prosecutes this appeal.
During the pendency of this appeal, the plaintiff, George W. Burt Jr., died on October 18, 1961. His widow, Mrs. Mary McDonald Burt and his surviving children, George W. Burt III, Lena Mae Jowers, and Edward Burt, filed a motion to remand the same, alleging that his death was directly traceable to the atropine which was sold to him by mistake, and if not, his heart was aggravated, and worsened by taking this wrong medication, and praying that the case be remanded so that the petition could be amended to set forth the wrongful death and survival action and to make the proper substitution as to parties plaintiff.
No motion was filed in this court asking that the widow and heirs be substituted as parties plaintiff. While it is a law that a valid judgment can only be rendered in a case after proper substitution of parties who represent the interest of the deceased litigant, the counsel for the plaintiff in his oral argument stated that in his Motion to Remand he requested a substitution of the widow and children of the deceased as parties plaintiff and appellants. Counsel for defending appellee conceded that for the purpose of these proceedings this motion could be so interpreted and joined in the request that the court render an order making a substitution.
We will first take up the question of the Motion to Remand in order to amend the petition and set up the death and survival action to be filed by the widow and children of the deceased plaintiff. Inasmuch as this suit was originally decided upon the question of the liability of the defendant caused by his alleged negligence, the defendant urges that a remand would be useless.
In other words, if there was no liability to the plaintiff when he was living because no negligence was proven, there would be no liability to the widow and children. Therefore we will first determine whether there was any liability caused by the negligence of the defendant to deceased plaintiff, and if the judgment of the lower court is correct there will be no necessity for a remand of the case.
The testimony as to the negligence of the defendant is very conflicting. The main witness for the plaintiff was the plaintiff himself, who testified that he had been purchasing drugs from Mr. Robb since sometime in 1955 when he suffered a heart attack. There is no question but what in 1955 the plaintiff did suffer a heart attack and spent some time in the hospital under the care and treatment of Dr. Nelda Faye Stafford. Dr. Stafford prescribed several medicines to relieve Mr. Burt, among which was nitroglycerin tablets to be taken for the relief of angina pectoris pains. Mr. Burt, realizing that the small orders originally called for by the prescriptions were inadequate and expensive requested Mr. Robb to sell him the nitroglycerin in bulk and at a reduced price. The results of this was that Mr. Robb agreed to, and did sell Mr. Burt nitroglycerin tablets in bottles prepared by the Lilly Laboratories, Inc., *115 containing 100 tablets each. Some of the time Mr. Burt would run out or be in danger of running out of the tablets, and would telephone Mr. Robb, who after having secured the permission of Dr. Stafford, would then deliver a bottle of tablets to Mr. Burt at his home. This appears to have been a common practice amongst druggists for this type of medicine.
On August S, 1956, Mr. Burt testified that he called Robb’s Drug Store and asked them to send him a bottle of nitroglycerin tablets. Mr. Burt states that he received a bottle which he assumed to be nitroglycerin tablets and began taking them. He had been in a habit of taking 10 or 15 a day to relieve his pain. He further testified that he began shortly after taking these tablets, to notice that his mouth was dry, he was thick tongued, his legs were partially paralyzed, causing him to fall, and he experienced difficulty with his vision. On the evening of August 7 he called Dr. Stafford, who came to his home, examined him, and stated that his symptoms did not result from his heart condition, but from some muscular trouble which she was unable to diagnose.
Subsequently, on August 8, Mrs. Burt, wife of the deceased plaintiff, examined the bottles and found there a bottle of atropine sulfate which was in the same colored bottle, same size and made by the same laboratory, with the same color label on it, but which was labeled atropine instead of nitroglycerin.
From this point on the testimony is very conflicting as to what happened. Mrs. Burt claims that she contacted Mr. Robb and that he admitted selling the atropine, expressing regrets over having sold it by mistake, and told her to destroy the bottle and that he would send out a free bottle. This is denied by Mr. Robb. He and his clerk, Mrs. Myrtis Uphoff both testified that Mrs. Burt came into the drug store, asked for Mr. Robb, and on his appearance asked him if he had sent the atropine to her husband. Mr. Robb denied that he did and then returned to his prescription room. Mrs. Uphoff heard this conversation and after Mr. Robb returned to his prescription room, continued the conversation with Mrs. Burt, during which Mrs. Burt told her that she did not know where her husband had gotten them, meaning the atropine tablets, because he got his medications from all over. She testified that Mrs. Burt also said “he threw all the bottles away, I got this bottle out of the trash.”
Mr. Robb, in substantiating his statement that he did not deliver the atropine to the plaintiff, testified that all of his drugs were stacked on shelves alphabetically. This would make the atropine sulfate under the letter “A” and the nitroglycerin under the letter “N”. He further testified that the nitroglycerin and atropine were at least eight or nine feet apart and about nine or ten shelves difference. He testified that he received all drugs and placed them on shelves himself, and because of the smallness of the demand for atropine, was only carrying one bottle in stock, which was on his shelf at the time of this incident with Mrs. Burt.
Mr. Kemp of Kemp’s Drugs testified that he kept his nitroglycerin and atropine tablets, as well as other tablets, loose and in the same drawer, although he did have separate partitions in the drawer for each.
Dr. Stafford testified that she visited Mr. Burt on August 7, and August 27, 1956 and on neither occasion did he exhibit or complain of dryness of mouth, hazy vision, paralysis or difficulty in speech. She further testified that she examined Mr. Burt carefully on both occasions and that he had over dosed himself with barbiturates and was depressed. As a result she cut down on his drugs and cancelled many of his prescriptions which was admitted by Mr. Burt.
He further failed to tell Dr. Stafford that Robb’s Drug Store had delivered a bottle of atropine. It would seem illogical that Mr. Burt, being in the condition he was in, suffering from a bad heart condition, would have failed to tell Dr. Stafford *116 his symptoms which he alleged in his petition and which he testified to on the witness stand, if those symptoms had been in evidence at the time she called on him. It is an elemental trait of human nature when you are suffering from anything to tell your doctor all of your symptoms, because the main thing you want and are working for is relief. Dr. Stafford, as well as some of the other doctors, testified that if Mr. Burt had taken atropine as alleged by him, the symptoms would have been visible to an examining doctor even if Mr. Burt did not complain of them.
Mr. Burt put on the stand Dr. Sparkman Wyatt and Dr. R. M. Gilliand, both psychiatrists, and Dr. Bryan Laikart, an internist. Those doctors only examined Mr. Burt, they did not treat him. Dr. Wyatt testified that he felt Mr. Burt was “claim conscious” and that he was neurotic long before this alleged incident occurred. He further testified on cross-examination, that this entire matter could have been a figment of Mr. Burt’s imagination.
Dr. Gilliand also testified that Mr. Burt was neurotic and had been neurotic before the alleged incident. He further testified that he felt that if Mr. Burt felt that Mr. Robb had sent him the atropine he would not expect Mr. Burt to continue to trade with Mr. Robb after the alleged incident.
There is no doubt but what Mr. Burt did continue doing business with Robb’s Drug Store for sometime after the incident occurred or until shortly before this suit was filed.
It is further proven that Mr. Burt did business with Food Town, and Kemp’s Drugs, and also Sitman’s Drugs, in spite of the fact that Mr. Burt testified at the time he was only doing business with Robb’s Drug Store, during the time of the atropine incident.
It is further shown that at some time after this incident, Mr. Burt changed his doctor, and began to use Dr. J. E. Toups. Dr. Toups was not called to testify as to Mr. Burt’s condition at the time he took over the case, or at the time the suit was tried. The natural presumption from this would be that Dr. Toups would be an adverse witness.
Analyzing all of the facts in this case, we agree with the findings of the trial judge that the plaintiff had failed to carry the burden of proof by a fair preponderance of evidence that Mr. Robb of Robb’s Drug Store negligently sent a bottle of atropine tablets by mistake to Mr. Burt. Therefore it is ordered that Mrs. Mary McDonald Burt, surviving widow, and George W. Burt III, Lena Mae Jowers, and Edward Burt, surviving children be substituted as parties plaintiff in this suit in place of the deceased, George W. Burt, Jr.; it is further ordered that the Motion to Remand be overruled; and that the judgment of the lower court be affirmed.
Affirmed.