204 So.2d 83 (1967)
Dolores MILONE, Wife of/and Robino BARNES
v.
TOYE BROTHERS YELLOW CAB COMPANY, New Orleans Public Service, Inc., et al.
No. 2728.
Court of Appeal of Louisiana, Fourth Circuit.
November 6, 1967.
*84 Edward G. Gillin, New Orleans, for plaintiffs-appellees.
William W. Ogden and Alvin R. Christovich, Jr., New Orleans, for defendants-appellants.
Deutsch, Kerrigan & Stiles, Charles F. Seemann, Jr., and John F. Tooley, Jr., New Orleans, for third-party plaintiffs-appellants.
Before YARRUT, SAMUEL and HALL, JJ.
YARRUT, Judge.
Plaintiffs, husband and wife, brought this suit against Toye Brothers Yellow Cab Company and its driver, Edward T. Gauthier, Sr.; New Orleans Public Service, Inc. and its driver, Lev. D. Willis, Sr., for damages for injuries suffered by the wife resulting from a collision between a Public Service bus and a Yellow Cab on January 22, 1965, about 11:00 a. m.
Judgment was rendered against all Defendants, in solido, awarding the husband medical expenses and the wife $3000 for her personal injuries, from which judgment all Defendants have appealed.
We will first consider the liability of Public Service and its driver. It is undisputed that Plaintiff wife was a passenger aboard the bus which was proceeding toward Lake Pontchartrain on St. Bernard Avenue, when it stopped in the intersection of North Tonti and St. Bernard Avenue, past the regular bus stop, to discharge another passenger who had re-rung the bell to call the driver's attention to the fact that the bus had passed his stop; and that very shortly after the bus stopped, the bus was hit in the rear by the taxicab. There is some dispute as to just how far into the intersection the bus was when it stopped, but from all the testimony we must conclude that it was at least 40 to 50 feet into the intersection. There is also some dispute as to whether the bus made a sudden stop.
Two witnesses testified for Plaintiffs in this regard, the Plaintiff wife herself and Mr. Ambrose Newton, the passenger who rang the bell and subsequently alighted from the bus in the middle of the intersection. Plaintiff wife testified that the stop was sudden. Although Mr. Newton testified that the stop was "an ordinary one," he also testified that he would have been hurt, too, if he hadn't been holding on to the railing in the rear of the bus because of the way the bus stopped.
Two passengers, Miss Ethel Lee and Mrs. Edna May Blunt, testified that the stop was not a sudden one as did the bus driver himself. However, the bus driver did testify that he was a little past *85 the regular bus stop when the bell was rung; that he was going approximately 20 miles an hour, and yet brought his bus to a stop within the length of the bus, which he estimated to be from 40 to 45 feet.
The trial judge concluded that the bus did make "a sudden and unexpected stop," stating that he was relying primarily on the testimony of the bus driver himself. In view of this testimony, we cannot conclude that the trial judge was manifestly erroneous.
A public carrier owes its farepaying passengers the highest degree of care, and if a passenger proves injury while on such a carrier, the carrier bears the burden of exonerating itself from even the slightest degree of negligence. Hopper v. Shreveport Rys. Co., La.App., 51 So.2d 845; Brown v. Homer-Doyline Bus Lines, La.App., 23 So.2d 348.
Public Service relies on Crawley v. City of Monroe, La.App., 26 So.2d 493; Freeman v. New Orleans Public Service Inc., 1 La.App. 600; Clogher v. New Orleans Ry. & Light Co., 143 La. 85, 78 So. 247; Johnson v. New Orleans Public Service, Inc., La.App., 139 So.2d 7, in which it was stated that there was no negligence attaching to the mere fact that a bus or other transit vehicle stops to discharge a passenger at some place other than a regular designated stop. However, these cases refer exclusively to the duty of a carrier to furnish a safe place to an alighting passenger, and not to the duty of a carrier to a passenger who, in the instant case, was injured because of a sudden, unexpected stop. We find that Public Service was negligent toward the Plaintiff wife, and that such negligence was a proximate cause of her injuries.
We will next consider the liability of Toye Brothers Yellow Cab Company and its driver. The driver was not available to testify because he died between the time the suit was filed and the trial. However, there is no question that the cab struck the rear of the bus almost immediately after the bus had stopped. Moreover, the investigating police officer testified there were only five feet of skid marks between the taxicab and the bus, indicating that the taxicab's brakes were applied when the cab was a very short distance behind the bus. The trial judge concluded that the cab driver was following too closely behind the bus, and that this was a concurrent cause of the accident. In view of the physical evidence, we must agree with the trial judge.
Our jurisprudence is to the effect that the operator of the following vehicle must keep his vehicle under control; to closely observe the forward vehicle; to follow at a safe distance, and if a rear-end collision occurs, he is presumed to be prima facie negligent. Bouis v. Employers Liability Assurance Corporation, La.App., 160 So.2d 36; Foster v. Phoenix Insurance Company, La.App., 146 So.2d 647; Poleman v. Employers Liability Assurance Corp., La.App., 164 So.2d 630; Cain v. Lumbermens Mutual Casualty Company, La.App., 178 So.2d 483. In the instant case the Yellow Cab Company did not sustain the burden of overcoming this presumption.
Hence, there remains the question of the causal connection between the collision and Plaintiff's injuries. A mechanic employed by the Yellow Cab Company testified there was only approximately $4.00 worth of damage to the cab. However, the investigating officer described the damage to the cab as "medium" and the bus driver testified he believed that one of the rear lights on the bus was broken. Two passengers, already referred to, who were aboard the bus, Miss Lee and Mrs. Blunt, testified that, although they heard the noise of the impact, they did not feel it. However, both of these passengers were seated in the front of the bus. Both the Plaintiff wife and Mr. Newton, the alighting passenger, testified they felt the impact. *86 In this regard, the Plaintiff wife testified as follows:
"A. Well, I wasn't comfortably sitting on the bus, I was bending over talking to the passenger, and when the impact occurred it threw me towards the window, getting a kink in my neck and hurting my back."
Also concerning the impact Mr. Newton testified as follows:
"A. And then when the thing hit the bus, well, by my holding on these two rails it shook me. By me holding these two rails, that's what kept me from going forward. If I wasn't holding those two rails I probably would have been, by the cab hitting the bus, it probably would have pushed me towards the front of the bus."
It is significant that both the Plaintiff wife and Mr. Newton were in the rear of the bus at the time of the impact. Consequently, we find that there was sufficient evidence to justify the conclusion that there was a causal connection between the impact and the injuries sustained.
With regard to quantum, Dr. George J. Garzotto, a general practitioner and the wife's original treating physician, testified she suffered a mild cervical sprain and a severe lumbosacral sprain; that he prescribed bed rest and muscle relaxants for approximately four months, during which time she suffered considerable discomfort and that, because she was not recovering sufficiently, he referred her to an orthopedist, Dr. Raymond Kitziger. Dr. Kitziger's report, which was admitted by stipulation shows that he treated the wife for two additional months, at the end of which time her pain had subsided and became intermittent.
Plaintiff wife testified she was in bed for approximately three weeks after the accident; that the pain she suffered for the six months she was under treatment was severe; but that, at the time of the trial, it was intermittent. Under all these circumstances, an award of $3000 for pain and suffering was not excessive.
We note that judgment was rendered, not only against Public Service and its driver, and the Yellow Cab Company, but also against the taxicab driver, Edward T. Gauthier, Sr. who was deceased at the time of the trial. A judgment against a deceased party, not properly represented, is an absolute nullity. Burt v. Robb, La. App., 137 So.2d 113; Williams v. Brown, La.App., 142 So.2d 865.
Therefore, the judgment against Edward T. Gauthier, Sr. is annulled and the suit against him is dismissed, without prejudice to any party desiring to proceed against his estate; otherwise the judgment appealed from is affirmed; Defendants to pay all costs in both courts.
Judgment amended and affirmed.