Statement of the Case.
MONROE, J.
This is an action for the recovery of damages resulting from the death of plaintiff’s husband and from injuries to plaintiff herself through the alleged negligence of defendant. Defendant denies the negligence attributed to it, and alleges that the matters complained of were brought about by the negligence of the parties injured.
The facts disclosed by the evidence are as follows:
On the evening of April 2, 1910, plaintiff, with her husband and others, accompanied Mrs. Whitford, an elderly lady who resided in the North, to the railway station at Hammond in order to see her safely on the north-bound train, which was due at 43 minutes past 8 o’clock. After waiting a few moments at the depot, they became aware that the train was approaching, and, knowing that the car in which they desired to secure *354 accommodations would be near tbe rear end, and that, the train being a long one, they would find it at a point considerably to the southward of the depot, they started in that direction, walking quite rapidly in order to be in advance of the crowd. At a point about 230 feet below the depot, there was a water tank elevated upon wooden posts, the nearest of which were 7 feet 3 inches from the eastward rail of the track upon which the train was approaching, thereby leaving, after deducting the projection or overhang of the ears, about 5 feet of space for the crowd to pass through, and upon that space, which was hut dimly lighted, water was usually dripping from the spout or other appliance through which the locomotives were supplied. Such as it was, however, it was the approved, and practically the only, way by which those intending to board the coaches towards the rear end of the train in question could reach them from the depot, and as defendant had provided a graveled pathway along that route, thereby inviting the public to make use of it, the invitation was accepted by the public and the route was in common use. When the decedent approached the tank, with the track upon his right (on which side, also, he was carrying the valise of his lady friend), his wife upon his left, and Mrs. Whitcomb to the left of his wife, he said to them, “Look out for the dripping water,” or something to that effect, and, in order to enable them to heed his warning, he himself changed somewhat the direction of his course, thereby bringing himself in contact with the train, which at that instant came upon them with the result that he was knocked violently against his wife, who, in turn, was knocked to the ground, and was himself so badly injured that he died within two or three hours; his injuries being described by the attending .physician as follows: 1
“The examination of the body showed - external and internal injuries; the chest wall, right side,, crushed in; ribs broken; shoulder blade split; right pelvic bone crushed and brim broken off; neck of right femur broken; tlie entire right side, from shoulder to hip, badly crushed and broken. There was also a cut in the right inguinal region, through the abdominal wall, thought to be caused by blow on spring or band of truss that he wore,” etc.
There were several witnesses who estimated the speed of the train at from 20 to 25 miles an hour; the engineer says from 4 to 10 miles. Our conclusion, considering the testimony, and also the effect produced upon the decedent, is that 12 or 15 miles an hour would probably be' nearer1 correct. A town ordinance prohibited a greater speed than 4 miles an hour. There was also considerable testimony upon the subject of the light, and we find that, while it was not so dark as that a person whose attention was concentrated =upon the matter could not have found his way along in safety, the light was, to say the least, uncertain and was insufficient to meet the requirements of the situation; that -is to say, a constantly recurring situation, in which' a number of people, waiting for a train after nightfall, would rush together through the narrow way between the tank and the track, and probably, at that point meeting the train, would be blinded by the glare of its headlight and confused and alarmed by its proximity and terrific roar. The decedent was 64 years of age, was a carpenter and contractor, and earned from $3.50 to $4 a day. His widow is also advanced in years, and was dependent upon her husband for support. She herself was considerably bruised, and, as may readily be understood, was subjected to a most distressing shock, which has affected her nervous system.
Opinion.
■ It is argued, on behalf of defendant, that, though the train was moving at a prohibited rate of speed, plaintiff should not be allowed to recover because the decedent left a place *356 of safety, when there was no necessity for his doing so, and, in placing himself in the way of the moving train, was guilty of the “grossest kind of negligence,” which was the proximate cause of the accident; and authorities are cited in support of the general proposition that, though a railway company may be at fault in running its trains too fast, a person who is thereby injured is not entitled to damages unless there be shown a causal connection between such fault and the injury. We affirm that doctrine, but we are of opinion that in this case there was causal connection between the fault of the defendant and the death of the decedent.
Defendant was at fault in failing to provide and maintain a safe and proper way of ingress and egress to and from its trains, and in operating-the train here in question at a rate of speed three or four times greater than that allowed by law. Those faults were not the results of momentary and natural impulse, but of deliberate calculation; and they operated, as we think, directly to bring about the accident out of which this suit has arisen. Thus the rear cars of the train always stopped below the tank, and those who went to the depot and desired to reach them were obliged to do so by way of the path which defendant had provided, which ran between the tank and the track and was unnecessarily narrow, insufficiently lighted, and otherwise objectionable by reason of the fact that the dripping or leaking of water upon it from the tank, or its appurtenances, was either always going on or was always to be apprehended. When, therefore, the decedent, who knew of the existence of the conditions mentioned, and who had two ladies under his care, reached the point where it became necessary to pass between the tank and the track, he did the perfectly natural thing of calling attention to the danger from the dripping of the water and of endeavoring to give the ladies room to escape it by himself moving farther away, and, in acting upon that natural impulse, his attention was distracted from the more serious danger that, in so moving or changing his course, he might collide with the train. But even then he might have escaped if the train had been keeping within the law in the matter of its speed. One or two of the witnesses, who also came to see Mrs. Whitford off and were following her and the decedent, testified that, in starting from the depot, they thought they would be able to pass the tank before the train reached there, and it is in evidence that the decedent said, after he was injured, that he did not know he was so near the train, and that he had not supposed that the train was approaching so rapidly. Decedent’s change, of course, was therefore superinduced by defendant’s negligence in failing to provide a proper means of ingress to its train; and the disastrous result of that change was caused by the train’s exceeding the speed limit allowed by the ordinance.
Judgment affirmed.