LAND, J.
The plaintiff claims $10,000 damages for personal injuries against the defendant Railway Company (hereinafter called the Railway Company), the city of New Orleans (hereinafter called the City), and the sewerage and water board of the city of New Orleans (hereinafter called the Board) jointly and severally.
The claim is predicated on an accident which happened to the plaintiff on February 6, 1910, at 9:30 p. m., immediately after she had alighted from a Prytania street car near the corner of Napoleon avenue, by reason of her stepping into an excavation in Prytania street, near the railway track, thereby dislocating her knee. Plaintiff alleges liability on the part of the Railway Company *686 by reason of the fact that the conductor of the car was careless and negligent in allowing plaintiff to alight in an unsafe place, causing her to step into said excavation, and because it was the duty of the Railway Company under its franchise to keep their tracks and streets alongside thereof in good order and in a safe condition. Plaintiff alleges liability on the part of the City, because it failed to perform the municipal duty of keeping the street in good order and safe for pedestrians, and to notice and repair the excavation, which had been there for some time.
Plaintiff alleges liability on the part of the Board on the ground that the excavation was made by some of its workmen, and they failed to properly fill it and tamp it, so as to make it safe.
The Railway Company pleaded the general issue, and averred that the injury was not caused through any fault or negligence of the company or its agents or employés, that the plaintiff alighted from the car in a safe place, and that the plaintiff after alighting stepped into a depression in the street, owing to her failure to look where she was going. .
The Board answered that it had dug a trench on Prytania street in 1908, and that the same was properly refilled, and averred that, if plaintiff s.tepped into the depression, it was through her own negligence.
The City answered, averring that, if the plaintiff was injured, it was due to her contributory negligence, and, furthermore, it was the duty of the Railway Company to keep the street in proper repair for a distance of one foot on each side of the track. The City specially denied that the street at the point in question was in a dangerous condition.
The ease was tried before a jury which found a verdict for $2,500 in favor of the plaintiff and against the Railway Company and the City in solido, and a verdict in favor of the Board. The Railway Company and the City have appealed.
[1] The evidence leaves no doubt that the hole or depression into which the plaintiff stepped after alighting trom the ear was several feet beyond the rail of the street ear track. Under its franchise, the Railway was bound to keep the street in good order and repair for one foot on each side of its rails. Hence the Railway Company was not responsible for said hole or depression in the street.
[2] The next question is whether the Railway Company put the plaintiff off in an unsafe place.
Under the city ordinance relating to the franchises of the company, it was provided that:
‘•Cars shall not be compelled to stop except on the further side of the crossings.”
In the instant case the stop was made on the near side of Napoleon avenue under a regulation requiring cars to stop before crossing 'other railway tracks. Plaintiff’s husband requested the conductor to let them off on the near side of Napoleon avenue, instead of at the regular stop on the far side of the avenue. Plaintiff, her husband, and her sister left the ear when it stopped on the near side of Napoleon avenue about 9:30 o’clock at night. Plaintiff, anxious not to miss the next ear on the Napoleon avenue line, turned and walked hurriedly in the street in that direction until she stepped into the hole or depression, and dislocated her kneecap.
[3] The hole was caused by the settling of the filling of a trench which had been dug for a water pipe connection by the employés of the water board in December, 1908. The accident in question occurred February 6, 1910. The plaintiff had never noticed the depression, although she had alighted in daylight at the same place several times before the *688 date of the accident. Dr. Graybill testified that he had frequently seen the depression which he described as three or four feet long by two inches deep, and further along in his testimony as three or four inches deep. Mr. Thompson describes the depression as one by one-half feet, and four or five inches deep, and testified that he and others had stumbled into it. Mr. Smith described the depression as a basin twelve or fifteen inches deep, but had never noticed it before, although he had alighted from the ears at the same place several times prior to the accident. Mrs. Langston, sister of the plaintiff, who had often traveled on the Prytania cars, testified that she had never noticed the hole until about two weeks before the accident. Mr. Hubert, a motorman on the Prytania line testified that he had never noticed the hole in question. Mr. Stewart, who visited the locality the morning after the accident, testified that the depression was about three feet wide and four inches deep. This estimate as to depth agrees substantially with the estimates of Dr. Graybill and Mr. Thompson.
The place at which the plaintiff alighted was a reasonably safe place, as shown by the fact that many persons had made use of it Without incurring harm. Plaintiff could have avoided the danger of walking at night on an unpaved street by staying on the car until it reached the regular stop on the far side of Napoleon avenue, or by waiting until the car moved, and then walking along the planked tramway between the rails of the track. Plaintiff, we think, did not exercise ordinary care and prudence on the occasion in question. She was in a hurry to catch the next car on the Napoleon avenue line, and took the lead of her husband, and sister, and other passengers, and walked rapidly in the dark over an unpaved street, in which ruts, holes, and depressions might be expected in the winter season.
The depression in question, seems to have been noticed only by a few persons prior to the accident, and its dimensions were not of a nature to attract public attention. It does not appear that any complaint of the existence of this hole was ever made to the City authorities, or that any officer of the City had any notice of its existence. It is a matter of common knowledge that similar holes exist in all the dirt streets of the Gity of New Orleans.
On the facts of the case as disclosed by the record, the plaintiff was more to blame than the Railway Company, and the City had no notice,- actual or constructive, of the the alleged dangerous defect in Prytania street.
It is therefore ordered that the judgment below be annulled, avoided, and reversed, and it is now ordered that plaintiff’s suit be dismissed, with costs in both courts.