GAISSER, Appellant, v. NEW ORLEANS PUBLIC SERVICE INC.

(Apr. 25, 1927. Opinion and Decree.)

(*Syllabus by the Court*)

1. **Louisiana Digest—Street and Interurban Railroads—Par. 19, 21; Carriers—Par. 30, 38.**

The obligation of a street car company to provide safe and proper means of ingress for its passengers is met when the means are free from danger to one using ordinary care.

Appeal from Civil District Court, Division "B". Hon. Mark M. Boatner, Judge.

Action by Mrs. Charles Gaisser against New Orleans Public Service Inc.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

W. J. Waguespack, of New Orleans, attorney for plaintiff, appellant.

Benj. K. Kernan, of New Orleans, attorney for defendant, appellee.

CLAIBORNE, J. In attempting to board a street car, the plaintiff fell and was injured. Hence this suit.

The plaintiff alleged that on April 18, 1925, at 10 o'clock a. m., she attempted to board the Dryades street car on the upper side of Peters or Jefferson Avenue on the lake side corner of St. Charles Avenue; that she was standing upon the street, as she was obliged to do, and endeavored to place her right foot upon the first step, but

that in so doing she fell by reason of the great distance between the street and the said step, and was thrown violently upon the brass handle of the street car where she was much injured, and was assisted by the conductor, who grasped her arm and pulled her up.

The defendant had not provided a suitable place from which its patrons could board its cars running upon the neutral ground in the center of said boulevard, but on the contrary, had to stand upon the street quite a distance below for the reason that the first step leading to the platform of the car overlapped the edge of the neutral ground at the only place where patrons are compelled to board the cars going towards the river; that the height from the street to the first step of the car is so great that it is not humanly possible for a lady of ordinary size to reach the first step without assistance; that plaintiff's fall was caused by the negligence of the defendant in not providing a safe and proper place to board the car; that she suffered excruciating physical pain during two weeks; that she was treated by Dr. Wymer, defendant's physician, who subjected her to a painful electric treatment; that she still suffers and believes that she will suffer indefinitely; that she was employed as a seamstress when she earned $45 per week from which she was incapacitated for two weeks; she estimates her damages as follows:

Two weeks' loss _____$   90.00
Physical pain _____ 1,910.00
                                          ────────
                                          $2,000.00
which she claims from defendant.

The defendant denied all the allegations of the petition and averred that it was informed that on August 18, 1925, at about ten o'clock a. m., a Mrs. C. Gaisser, in boarding a Dryades car at the corner of

St. Charles and Jefferson Avenues, dropped a package on the platform which she stooped down to pick up, and in raising her body in a stooped position, struck her shoulder against the handhold on the door of the car.

There was judgment for defendant rejecting plaintiff's demand and she has appealed.

"It is well established in jurisprudence that railway companies are under the legal obligation to furnish safe and proper means of ingress and egress to and from trains, platforms, station approaches, etc., and it is well settled that any person injured without fault on his part by any dereliction of its duty in the premises by a railway company, can recover damages against the corporation for injuries thus received." Peniston v. Rrd. Co., 34 La. Ann. 777; Turner vs. Vicksburg, S. & P. Co., 37 La. Ann. 648; Le Blanc vs. Sweet, 107 La. 368, 31 So. 766; 10 C. J., p. 916, S. 1341, 1342, 1306, 1363; Reine vs. Rrd., No. 7596 Orl. App., Bk. 55.

The question in this case therefore is, did the defendant furnish the plaintiff safe and proper means of ingress into its car?

The evidence is that the railroad track is built upon a neutral ground; that the neutral ground is seven inches higher than the street, and that the lowest step of the car is 16½ inches above the neutral ground making a distance of 23½ inches from the street to the lower step; that the neutral ground extends 2½ inches from the lower step; that the plaintiff was 48 years of age and weighed 164 pounds and was 5 feet 7 inches in height; that when she attempted to board the car she carried "some packages in her arms"; that she attempted to ascend the step by lifting her right foot from the ground and trying to put her left foot upon the step, in so doing she slipped and dropped her bundles and fell upon the brass rod on the right hand side of the car,

when the conductor assisted her to rise and picked up her bundles.

The conditions existing upon the date of the accident were the same which had prevailed for a long time previous, both as to the street, the neutral ground, and the cars. They had been established by the city and could not be changed by the defendant. The defendant had no right to raise the street nor to widen the neutral ground.

There was no record of any accident having happened to any passenger attempting to board the car; while the height of the steps from the ground made it inconvenient to reach them from the ground they were not accompanied with any danger, which is the essential element of fault.

A passenger could have put his foot from the street upon the neutral ground, a distance of only seven inches, and thus have divided the distance to the step. Landphere vs. Ill. Cent. R. Co., 132 La. 351, 61 So. 399; Leveret vs. Shreveport Ry. Co., 110 La. 404, 34 So. 579. But the plaintiff was encumbered with packages and tried to elevate herself from the street to the step directly, a distance of 23½ inches.

It is evident that she slipped. The condition of her skirts or her failure to grab the handle bar or the packages may have caused her to fall. Her own witnesses testify as follows. Mrs. Anderson says:

"Q. Could you board the car easily without assistance?

"A. I had one fall out of the car, but I have always gotten in very easily.

"Q. Boarding a car going to the river, did you ever fall there?

"A. No, sir."

Mrs. Hanna said:

"Q. Did you have trouble in getting in the Dryades car at that point?

"A. No, sir; no serious trouble, nothing only the step being high. No, I never did fall."

Mrs. Claycomb testified that she often had occasion to board the car at that corner; on one occasion she would have fallen had not the conductor assisted her.

There is no evidence of anyone having fallen at that corner while entering; the only evidence is that it was inconvenient and for that reason the landing place was changed from that corner to the opposite corner towards the river.

In the case of Clogher vs. Rrd., 143 La. 85, 78 So. 247, the court said:

"Where a street car stopped * * * at a place where the step of the car was 15½ or 16 inches above the roadway, so that a passenger might safely alight by extending his foot seven inches out and stepping down while holding on to the handle bar, such place was reasonably safe, and the carrier was not liable for an injury to a passenger while alighting."

We do not think that the increased distance of 7½ inches was sufficient to make the steps dangerous, if proper precautions had been taken. Freeman vs. N. O. Public Service, No. 9299 Orl. App.

The handle bar and the conductor were there to assist the passenger. Facts speak louder than opinions. For the many years during which the conditions complained of had existed, numberless passengers had entered the cars and not an accident was recorded.

The same conditions exist in many other neutral grounds upon which cars are run.

We are of opinion that the judgment is correct and it is therefore affirmed.