## HARANG v. N. O. PUBLIC SERVICE, INC.

———

(June 18, 1928. Opinion and Decree.)
(July 2, 1928. Rehearing Refused.)
(October 3, 1928. Writ of Certiorari and Review denied by Supreme Court.)

———

Quintero and Quintero, and H. W. Robinson, of New Orleans, attorneys for plaintiff, appellant.

Benjamin W. Kernan, of New Orleans, attorney for defendant, appellee.

## OPINION

JONES, J. Plaintiff, who had fallen while alighting from a street car of defendant just in the curve of the tracks at the corner of Baronne and Canal Streets, sued for sixty-seven hundred dollars as damages for a broken ankle. She bases her case on the following charges of negligence:

(1) That the defendant was negligent in that the landing place over and above the curve of the tracks was an unsafe landing place and was or should have been known to be such by defendant.

(2) That the type of grooved rail used at the point indicated was dangerous to life and limb.

(3) That the rail was also dangerous because it was highly greased and was partly hidden by the steps of the car and passengers could not see said rail in alighting from the car.

(4) That defendant maintained a customary landing place at or near the point indicated and said stopping place was an unusual place to disembark passengers.

Defendant denies any negligence on the part of the company or its employees and says that Mrs. Giles was injured as alleged in her petition it was due to her own carelessness, neglect and imprudent conduct in failing to exercise that degree of care required by the circumstances then and there existing, considering the character and style of shoes she wore and the probable effect thereof on a person of her weight.

The suit was filed in July, 1925, and in July, 1926, was tried without a jury. There was judgment for defendant rejecting plaintiff's demands and she has appealed.

Plaintiff and the motorman are the only witnesses as to details of fall.

Plaintiff testifies she boarded the car, paid her fare, about 9.30 o'clock on the morning of March 18, 1925, and as she wanted to leave the car at Baronne and Canal Streets, went out with the other passengers to front platform, when the car stopped partly over the curve; when she stepped down, she was facing as though she was going to walk ahead of her, not to the back; she held her left hand on the bar used by passengers, put her right foot on the step and the left foot toward the ground; she did not see the rail as the steps partially covered it; the toe on the outside of the foot got into the rail and threw her so that she fell half on the neutral ground and half on the street; she identified the shoe worn that day and indicated the front as the part that went into the rail.

At time of accident she weighed about 153 or 155 pounds; about 5 feet 7 inches tall and her age is 30; thinks rail was a little greasy but could not say that she saw it, "everything happened so, quick I couldn't say that."

Her recollection is that cars always stopped around the curve; on the neutral ground there was a place for passengers to alight, but it made a perfect point with the curve rail and the neutral ground at that intersection is almost even with the street as shown in the pictures.

When she left car, motorman was on front platform; she passed about two feet back of him and he gave no warning of any kind as to condition of track or stepping to avoid it.

Under cross-examination she said she had lived in New Orleans about twelve years; frequently came uptown on that line of cars and got off at corner of Baronne and Canal; never was hurt before; could not say that cars always stopped at the same place; thinks she got out from middle of step but did not remember exactly, nor could she say positively whether the bar she held divided the car step, but she held the bar and when she stepped to the ground her toe caught in the car track; she let go the bar because weight of her body pulled it as she was thrown; the track was so that her foot went into it.

The motorman testified substantially as follows:

He stopped at regular place about a foot from white line placed there by traffic police to mark foot-way for pedestrians; car was slightly in curve; several passengers who got off ahead of lady were not hurt; saw her when she got off; she landed safely on the ground and made one step away from the car and fell.

He could not say what she stepped on, or into, or anything of that kind; the rail was just at the step of the car; she could have stepped into it; she was not positive whether she did or not. When his attention was called to Mr. Johnson's testimony that Mrs. Giles' body was lying a foot or a foot and a half from step of the car when he got there, witness said: "Yes, sir, just about that, just about one step. She wasn't lying, she was in a sitting position." He did not get down to examine locality; he did not see any hole or object into, or onto, which Mrs. Giles could have stepped, which would have caused her to dislocated her ankle or her leg.

The photograph of the specific car placed just as it stood is in the record. This shows that the car had one sliding door, with the handle bar for passengers on the front end of the door.

It would appear that a passenger, who was holding the bar with her left hand and facing to the front of the car, would ordinarily keep his left foot on the step, and place his right foot on the ground.

However, as the motorman is utterly unable to explain the fall and plaintiff does not offer an explanation, we have accepted after much consideration the version of plaintiff, though it is confusing and improbable.

At the front end of the step the curve was one foot and one-eighth inch distant therefrom and at the rear of the step it was three and seven-eighths inches therefrom.

Four or five persons got out of the car before plaintiff did; none of them fell down.

The place where the car stopped had been the usual stopping place for cars bound uptown for at least a year and a half, before the accident, in accordance with the orders of Capt. Casey, head of the Traffic Police Department, and cars continued to stop at that curve after the accident until the traffic signals on that corner were changed some weeks later; the tracks at that place were standard construction and in excellent shape; what is known as a guard rail is a specially designated rail for curve work, in order to keep the car on the track in going around a sharp curve, and the inside of the curve is a little higher than the ball of the rail. The pavement on the inside comes up half flush with the ball, and on the outside it is flush with the ball of the rail. The pavement at that point was in good shape, it is right at the point where the pavement meets the neutral ground curve, and the two are about flush at that point. Groove in guard rail is 9/16 of an inch deep, that is below the ball of the rail, top of guard rail; space between ball of rail and guard rail is 1 5/8 inches.

Was this a reasonably safe place under these facts?

In Clogher vs. N. O. Ry. & Light Co., 143 La. 85, 78 So. 247, where a passenger was injured in alighting from a car which had stopped twenty feet from the usual station and where the gravamen of plaintiff's charge of negligence was, as it is here, that defendant had failed to furnish a reasonably safe landing place, the Supreme Court said:

"At the place where the car stopped, the step of the car was fifteen and one-half or sixteen inches above the roadway, accordingly as the stop was made fifteen or twenty feet from the regular stopping place; and hence all plaintiff would have had to do for safely alighting would have been to extend her foot seven inches out and step down fifteen and one-half or sixteen inches while holding on to a handlebar. We think such a place was reasonably safe, and that if the plaintiff had been mindful of her step she would not have fallen."

In Freeman vs. New Orleans Public Service, Inc., 1 La. App. 600, at the time of the accident the car in which plaintiff was a passenger was stopped about 120 feet from the terminus. The bottom step of the car was some four or five inches higher from the ground than the step would have been if the car had discharged its passengers at the usual stopping place at the end of the line, but the ground itself was level. Plaintiff testified to the effect that the cross-ties upon which the tracks were laid were elevated some four or five inches above the ground level. Two of defendant's witnesses stated that the ground was level with the cross-ties,

the spaces between the cross-ties being filled with cinders.

The Court said:

"Under the circumstances of this case, did the defendant carrier fail in its duty to provide a safe landing place for its passenger, the plaintiff, in the question we are called upon to decide.
"It was not the usual landing place and a longer step was necessary in order to alight from the car, but neither circumstance constitutes negligence on defendant's part." Citing Clogher vs. N. O. Ry. & Lt. Co., 143 La. 85, 78 So. 247.

In Gaisser vs. New Orleans Public Service, Inc., 6 La. App. 139, it appeared that plaintiff in boarding a Dryades car at the corner of St. Charles and Jefferson Avenues, fell and was injured. The conditions existing upon the date of the accident were the same which had prevailed for a long time previous, both as to the street, the neutral ground, and the cars. There was no record of any accident having happened to any passenger attempting to board the car.

The Court said:

"We do not think that the increased distance of 7½ inches was sufficient to make the steps dangerous, if proper precautions had been taken. * * * Facts speak louder than opinions. For the many years during which the conditions complained of had existed, numberless passengers had entered the cars and not an accident was recorded. The same conditions exist in many other neutral grounds upon which cars are run."

In Carroll vs. N. O. Ry. & Light Co., 132 La. 683, 61 So. 752, the Court said:

"The place at which plaintiff alighted was a reasonably safe place, as shown by the fact that many persons had made use of it without incurring harm."

In Durieu vs. N. O. Public Service, Inc., 7 La. App. 276, the Court said:

"Carriers must provide reasonably safe landing places in discharging passengers. But the fact that the surface of the pavement is uneven and there are cracks in the pavement does not in itself establish the carrier's negligence."

In Callier vs. N. O. Ry. & Lt. Co., No. 8126, Court of Appeal, the Court held:

"Negligence is the failure to use such care as is necessary to avoid a danger which should and could have been anticipated, by reason of which the plaintiff has suffered an injury."
"A defendant can only be required to guard against anticipated danger."
"Evidence that no accident had occurred for a long time after the existence of a certain condition of things, and that none suggested itself to the mind, would justify the failure to anticipate possible danger."

In Gilliam vs. T. & P. Ry. Co., 114 La. 272, 38 So. 166, the Supreme Court, in discussing what is implied in the term negligence, has said:

"Defendants have been repeatedly relieved from the charge of negligence where the act done or omitted to be done was one which the party had no reasonable ground to know or believe, or could not reasonably be held to foresee in the light of the attending circumstances, or which he did not know would carry with it injury as its natural and probable consequence."

We think the above decisions are controlling in this case.

Plaintiff relies upon the decision of the Supreme Court in Hopkins vs. N. O. Ry. & Lt. Co., 150 La. 61, 90 So. 512, 19 A. L. R. 1362, and the decisions of this Court in Rizzo vs. N. O. Ry. & Lt. Co., 7 La. App. 687.

These decisions are not applicable where the cause of the accident is proved.

For above reasons the judgment is affirmed.