No. 3758

Second Circuit

———

## THOMAS v. SHREVEPORT RAILWAYS COMPANY

———

(April 10, 1930.  Rehearing Refused.)
(March 24, 1930.  Opinion and Decree.)

———

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, attorneys for plaintiff, appellee.

Wise, Randolph, Rendall & Freyer, of Shreveport, attorneys for defendant, appellant.

DREW, J. Thelma Thomas, the daughter of plaintiff, became a passenger on one of defendant's street cars at Kings Highway and Southern avenue, for transportation to her home at Sixty-Eighth street and Southern avenue in what is known as Cedar Grove.

It is alleged that plaintiff's daughter, upon arrival of the street car at her destination, proceeded to alight therefrom, and, while attempting to do so, stepped upon a rock, stone, or other obstacle with her left foot, causing it to slip and turn, severely spraining the ankle, muscles, ligaments, and tendons thereof, and cutting, bruising, and lacerating her right leg, and that the accident and injuries complained of were caused by the defendant in negligently failing to provide a safe place for passengers to alight from its cars at Southern avenue and Sixty-Eighth street. .

Plaintiff claims damages for himself in the sum of $40, for drugs and medical fees, and for the use and benefit of his daughter, Thelma, in the sum of $2,500, for physical pain, mental anguish, and permanent injuries.

Defendant admitted the relation of carrier and passenger, as alleged, and denied all other allegations. It denied that the landing place was unsafe, as alleged, and denied that plaintiff's daughter was injured while attempting to alight from the street car, and alleged that she alighted safely and was injured after taking several steps. It further alleged, in the alternative, that the young lady was familiar with the landing place and was injured through her own negligence, that the condition and situation of the landing place was apparent to the injured party, and that she was guilty of contributory negligence in failing to use ordinary care and reasonable diligence in observing the situation before undertaking to step or walk, and that said contributory negligence bars her recovery.

The case was tried in the district court by a jury, and judgment was awarded plaintiff in the sum of $40 for himself and in the sum of $650 for the use and benefit of his minor daughter, Thelma. Motion for new trial was urged and overruled by

the district judge. From that judgment defendant has appealed, and plaintiff has answered the appeal, asking this court to increase the judgment to the amount originally prayed for.

There are two questions of fact to be decided in this case:

(1) Did Thelma Thomas fall while in the act of alighting from the street car and not after safely alighting?

(2) Was the landing place provided by defendant an unsafe landing place for Thelma Thomas and other passengers alighting from the street car?

The jury, having for its particular duty that of determining issues of fact, decided both questions in the affirmative, and the trial judge refused a rehearing in the case, thereby adding his judgment to that of the jury. Appellate courts are reluctant to reverse a judgment based upon the finding of a jury, unless the preponderance of the evidence indicates that the jury's findings are clearly erroneous.

The record in this case consists of four hundred pages, a great deal of which pertains to uncontroverted issues, and it would be an endless proposition to discuss in detail the evidence in the case. It suffices to say that, on the first question necessary to be determined, the evidence is somewhat conflicting. However, the preponderance is with the plaintiff, and we see no error in the finding of the jury on that issue. Thelma Thomas was in the act of alighting from the street car when she fell.

The second question is more involved, and the facts are as follows: The defendant company constructed its street car line through the city of Cedar Grove before the same was incorporated, and in the year 1924 or 1925 the village decided to pave Southern avenue, and defendant was called upon to pave the eighteen-foot strip supposed to be covered by its right of way grant from the police jury, and some objection was raised to this by defendant. The village proceeded to pave and did pave the street on both sides of defendant's right of way, extending nine feet on each side of the street, and leaving the eighteen-foot strip occupied by defendant and on which it had its street car tracks in the center. After this paving was completed, there was some kind of a compromise agreement made between the city of Cedar Grove and the defendant company, which is not made plain by the testimony, and the city passed an ordinance ordering that the eighteen-foot space on Southern avenue not paved to be paved with limestone rock to a depth of eight inches with a topping of finer aggregate, and ordering defendant company to pave that part of said space occupied by its main track as located after removal to the center of the street and also that part occupied by its switches, side tracks, and turnouts as at present located. The tracks at the time the ordinance was passed were not in the center of the eighteen-foot space, but were later moved to the center of it.

By authority of this ordinance, dated January 12, 1925, the defendant company proceeded to pave said strip of eighteen-foot width by filling it with crushed rock and placing on top a smaller gravel. No other binding was used. The job when complete was very unsatisfactory to residents of Cedar Grove. The crushed rock used was entirely too large for the purpose, and when automobiles drove over this part of the street, the rocks would fly and were constantly breaking out window panes in the houses along Southern avenue, and after every rain the rocks would wash onto

the pavement and sidewalk in great quantity, necessitating the removal thereof.

The theory of the plaintiff is that the smaller gravel placed over the large crushed rock would act as a binder, and, when the rain fell and traffic passed over this section of the street, the rock would cement together and make a solid even surface. However, the great preponderance of the testimony, including among the witnesses the last two mayors and the last city judge of the city of Cedar Grove, is that what was intended was never accomplished, and that rain washed the smaller gravel away or caused it to sink below the level of the large rock, leaving a surface of large crushed rock ranging in size from one-inch in diameter to as large as a man's fist, without anything to bind them together. This was the condition of the landing place where Thelma Thomas alighted from the car at the time of the accident complained of here. Plaintiff offered in evidence a quantity of the rocks as an exhibit. This exhibit was placed before a number of witnesses, fifteen in all, who testified that the exhibit was a fair representation of the landing place at Sixty-Eighth street and Southern avenue in October, 1928, the landing place complained of on that date.

The preponderance of the testimony is that one looking down at the ground before alighting from the car would see nothing but rocks, loose rocks, varying in size, as before stated; that there was no way of knowing whether one rock or another would turn when stepped on, as they were of the different shapes one might expect of crushed rock; and that the landing was unsafe and dangerous and one would have to be exceptionally careful and easy in stepping onto said rocks.

Mr. Wynn and his wife, who operate a filling station on this corner, testify that other people have fallen at this place. However, the defendant company, through its claim agent, shows that it never had to pay a claim or had a claim reported to it because of some one falling in alighting from a car at this point.

Defendant offered in evidence pictures taken of the location to show the true condition of the street at the corner of Sixty-Eighth street and Southern avenue. However, these pictures were taken about six months after the accident, and the testimony shows that the street at this point had been greatly improved since the accident. The pictures were taken at a distance of from fifty to one hundred feet, and the photographer who made the pictures testified that, in order to show the true size of the rocks, the camera would have to be within eight or ten inches of the rocks.

The jury found that the condition of the street was as alleged by plaintiff, and that the landing place was as shown by the exhibit of rocks introduced in evidence and was unsafe. We find no error in their finding on that issue.

Defendant relies on the case of Carroll vs. N. O. Ry. & L. Co., 132 La. 683, 61 So. 752, in which the court said: "The Railway was bound to keep the street in good * * * repair for one foot on each side of its rails," and this depression was several feet away from the rails. The place "was a reasonably safe place, as shown by the fact that many persons had made use of it without incurring harm."

That case is distinguished from this in that the plaintiff in the Carroll case alighted safely from the car and walked several steps before stepping in a hole in the

street, had requested to get off at a place that was not a regular stopping place, had walked rapidly in the dark over unpaved streets in which ruts, holes, and depressions might be expected in the winter time, and the franchise of the company expressly provided that the company was to keep the street in repair only one foot on each side of its rails. There is no such express statement shown to be in the franchise of the defendant here. There the court held that the plaintiff did not use ordinary care, and that the accident was due to her failure to look. That cannot be charged to plaintiff's daughter in this case.

Defendant also relies on Clogher vs. N. O. Ry. & L. Co., 143 La. 85, 78 So. 247, wherein the court held that, if the plaintiff had used precaution and looked where she was stepping, she would not have been injured. The step was sixteen inches above the roadway, so a passenger might alight by extending his foot seven inches out and stepping down. The plaintiff in the Clogher case was guilty of want of precaution and thereby guilty of contributory negligence. She had a safe place to land if she had looked. Thereby that case is distinguished from the case on trial; for in the case before us the landing place looked as safe at one spot as it did at another.

Freeman vs. N. O. Public Service, 1 La. App. 600, was decided on the authority of the Clogher case. There was no claim in the Freeman case that the plaintiff slipped on alighting from the car. In that case the ground was level and the step about four or five inches higher from the ground than at regular stopping place. There was no contention that the landing place itself was not safe. It was level ground.

Bass vs. Ill. Cent. R. R. Co., 4 La. App. 175, relied on by defendant, is not in point.

The question in that case was: Was there sufficient light of the steps and of the platform. The court decided the issue of fact in favor of the defendant.

Gaisser vs. N. O. Public Service, 6 La. App. 139, is another case cited by defendant. There the court held that the plaintiff did not take proper precaution, and said:

"While the height of the steps from the ground made it inconvenient to reach them from the ground they were not accompanied with any danger, which is the essential element of fault. A passenger could have put his foot from the street upon the neutral ground, a distance of only seven inches, and thus have divided the distance to the step. * * * But the plaintiff was encumbered with packages and tried to elevate herself from the street to the step directly, a distance of 23½ inches."

In the case before us, all places on the ground looked alike, and there was no matter of choice, only a matter of chance.

Harang vs. N. O. Public Service, 9 La. App. 91, 119 So. 86, is another case in which the plaintiff could have looked where he was stepping and have avoided the accident. He did not use proper precaution, and the court rejected his demand. If he had used proper precaution, he would have stepped onto pavement instead of stepping in groove of rail.

In Wagner vs. N. O. Public Service, 9 La. App. 699, 120 So. 72, cited by defendant, the court said:

"We are entirely unable, however, to agree with plaintiff that the point at which she was invited to disembark was unsafe. The evidence, and particularly the pictures of the street, convince us that the place at which the car stopped was reasonably safe, and that any ordinarily prudent person could have alighted there with absolute safety. Plaintiff is an unusually stout

person, and was wearing shoes with very high heels, and it seems not at all improbable that there was some causal connection between her fall and these high-heeled shoes. In any event, the street on which plaintiff alighted is as good as is ordinarily found, and was certainly sufficiently safe to relieve defendant of responsibility. A railroad company is not liable to furnish a concrete pavement, or a wooden platform, but only such an alighting point as is safe for the ordinarily prudent person."

The rule of law announced in that case is sound, but the present case is distinguished from the Wagner case in that the evidence in the present case convinces us that the place at which the car stopped was not reasonably safe and an ordinarily prudent person could not have alighted there with absolute safety. Therefore the converse of the rule laid down in the Wagner case is equally sound.

"Defendant's obligations, as a carrier, require that it shall carry its passengers safely, unless prevented by some act of God or vis major of man, and shall provide them with a safe place of exit; but, in this instance, though it provided the place, the place was unsafe, which was worse for the passenger than if no place had been provided, and defendant is liable, in damages, for the consequences to plaintiff, who, as a passenger, was thereby injured." Hamilton vs. La. Ry. & Nav. Co., 147 La. 622, 85 So. 611, 613; Turner vs. V., S. & P. Ry. Co., 37 La. Ann. 648, 55 Am. Rep. 514; Le-Blanc vs. Sweet, 107 La. 355, 31 So. 766, 90 Am. St. Rep. 303.

A carrier is bound to exercise the strictest diligence in receiving a passenger, conveying him to his destination, and setting him down safely, as the means and circumstances of the case will permit. Hopkins v. N. O. Ry. & L. Co., 150 La. 61, 90 So. 512, 19 A. L. R. 1362; LeBlanc vs. Sweet, supra.

"The contract between (a common carrier and its passengers) is one which, from time immemorial, has imposed upon the obligor exceptionally severe obligations. Safe carriage is not merely an incident of the contract, but it is its very direct object." Patton vs. Pickles, 50 La. Ann. 864, 24 So. 290, 293.

"Negligence of a common carrier includes its negligence in all the departments of its undertaking.

"The passenger, is not relieved of all obligation as to his own safety, but unlike the carrier, he need not exercise the highest degree of care. He is bound to exercise only ordinary care and prudence to preserve himself from injury.

"The standard by which to determine whether or not an adult passenger has failed to exercise the proper degree of care is whether a person of ordinary prudence in the same situation, and having the knowledge possessed by the passenger, would have done or omitted to have done the alleged negligent act. The passenger has the right to rely confidently on the care and watchfulness of the carrier to make all things safe for his transportation, with its incidents." Clerc vs. Morgan's L. & T. R. R. & S. S. Co., 107 La. 370, 31 So. 886, 90 Am. St. Rep. 319.

"It is sufficient for a passenger suing on a contract for safe passage to show that he was not set down safely at his destination to throw the burden of explanation on the carrier, and it is for the carrier to prove what negligence and whose prevented the fulfillment of the contractual obligation." Hopkins vs. N. O. Ry. & L. Co., supra.

In the case of LeBlanc vs. Sweet, supra, the court said:

"There is a broad difference, between the obligations of a carrier to a passenger and his obligations to a third person complaining of tort; the burden of proof in the latter case, save where otherwise provided by statute, resting upon the claimant to establish both the injury and the negligence which caused it, whereas in the former case it is sufficient, in order to throw the burden of explanation on the carrier, for the passenger suing on a contract for personal carriage to establish the

contract, and to show that he has not been safely set down at his destination. It is then for the carrier, and not the passenger, to show what negligence, and whose, prevented the fulfillment of the contractual obligations of the carrier."

The defendant alleges in the alternative that plaintiff's daughter was familiar with the landing place, having used same in boarding and alighting from the cars for several years, and that she failed to observe ordinary care before stepping off the car. This is the most serious defense to the case.

Thelma Thomas was familiar with the landing place and had used it a great number of times during the previous two or three years in going from her home to school and returning, and she knew that the street was a street of rocks, and by using care she had never before been injured, and it is not shown that she did not use the same caution on this occasion.

The defendant was also familiar with the landing place. It is shown that the president of defendant made weekly trips over the entire line for the purpose of inspection, and that its construction foreman made daily trips over the entire line for the purpose of observing the condition of the line. The defendant had built the street on which this landing place was and in fact was responsible for its condition from the beginning. We do not think the defendant should be allowed to construct a dangerous landing place and invite the public to use it, it being a regular stop in a populous part of Cedar Grove, where many passengers alight, and get on the car, and then say to the public, "You use this landing place at your own risk." It would take a rather broad application of the law of contributory negligence to cover such a case.

The burden is on the carrier to establish affirmatively the contributory negligence of the passenger. Buechner vs. New Orleans, 112 La. 599, 36 So. 603, 66 L. R. A. 334, 104 Am. St. Rep. 455; Boutte vs. N. O. Terminal Co., 139 La. 945, 72 So. 513; Aymond vs. Western Union Tel. Co., 151 La. 184, 91 So. 671; Hopkins vs. N. O. Ry. & L. Co., 150 La. 61, 90 So. 512, 19 A. L. R. 1362.

We do not think the defendant has established contributory negligence on the part of plaintiff's daughter, Thelma Thomas.

She sustained a sprain of her left ankle and bruises and laceration of her right leg. The injuries to the right leg were slight and amounted to very little, only scraping the skin off as her leg dragged against the bottom step of the street car. She was confined to her home in bed for three days and to the house for possibly a week after leaving the bed; she then used crutches for a few days, and returned to school in two or three weeks after the accident. Several doctors have testified that she has a weak ankle due to the sprain, and that some ligaments are torn loose, and that she will be more susceptible to sprain in that ankle in future than she was prior to the accident, and that the injury is permanent in that respect.

It was over a year after the accident when the case was tried in the lower court, and at that time she was attending school regularly and working at Kress' store on Saturday, standing on her feet all day. She has not received any other sprain since the accident, and, while she complains that after standing all day on her feet her ankle swells and gives her some pain, it is shown by her own doctor that, when he examined her, both ankles were swollen, which would lead us to be-

lieve that the swelling was possibly caused from some other source than the accident, as only one ankle was injured when she fell from the car. She does not limp when walking, and gets about as any other girl. The jury had the opportunity of seeing the young lady in court and of observing her during the trial which lasted for four days, and we feel sure they awarded her damages in the amount they felt she was entitled to, and we can find no good reason for disturbing their findings.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed; cost of appeal to be paid by appellant.